*Middlesex,*
*July, 1843.*

Brainerd
*v.*
Brainerd.

---

## THE FOURTH ECCLESIASTICAL SOCIETY IN MIDDLETOWN *against* MATHER.

*A, B* and *C*, in *April*, 1810, in contemplation of a marriage between *A* and *B*, entered into an indenture tripartite, by which *A*, having received personal property of the value of 6595 dollars, as the marriage portion of *B*, covenanted, that in case he should survive B, he would, within six months after her death, pay two third parts of that sum to *C*, in trust for such person as *B* should, by will, appoint ; and *C* covenanted that he would use all proper means to collect such sum as should become due from *A*, and pay it over to the appointee of *B*. In a few days afterwards, the marriage between *A* and *B* took place. In *January*, 1811, *B* made her will, by which she gave to *A* the use of all said property during his life ; and then, after giving a legacy to a nephew, disposed of the residue of her estate to her brother *D*, and appointed *A* her executor. In *June*, 1811, *B* died. *A* accepted the trust of executor ; and the court of probate limited the term of six months for the presentment of claims against *B's* estate. *A* remained in possession of said property,

Middlesex,
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
v.
Mather.

appropriating the income thereof to his own use, until his death in 1841. On an appeal from the report of commissioners on *A*'s estate, it was held, that *D*'s right under the will of *B*, to two thirds of said property, was not barred, by the neglect of *C* or *D* to present the claim within the time limited for the exhibition of claims against *B*'s estate.

On an appeal from a report of commissioners, the claims as exhibited to them, are open for examination in the superior court.

Therefore, if the claim of *A*, as exhibited to the commissioners, be rejected in part by them, and *B*, another claimant, appeal from the report, the whole claim of *A* is open for examination in the superior court, and it is competent to that court to allow the whole.

Where the land of the wife was sold, by the husband and wife, and a promissory note for the avails was taken in her name, and kept by her, during her life, after which it was found in one of her drawers, and was inventoried, by her husband, as a part of her estate; it was held, that such note, when made, became the property of the husband.

In such case, no agreement between the husband and wife, could be made, during coverture, which, in legal effect, would transfer, by way of gift or sale, the property in the note, from the husband to the wife.

THIS was an appeal from the doings of the commissioners on the estate of *Thomas Miner*, M. D., deceased, touching certain claims against that estate in favour of *Samuel Mather*.

The claim of *Samuel Mather* exhibited to the commissioners, was as follows:

" The estate of Dr. *Thomas Miner*, deceased,

To *Samuel Mather*,   Dr.

To the amount of the inventory of the estate of Mrs. *Phebe Miner*, deceased, to which said *Samuel Mather* is entitled under the last will and testament of said *Phebe Miner*, as her residuary devisee and legatee, *viz.*

| | |
|---|---:|
| One lot of land of about 20 acres, specified in said inventory, | $1000,00 |
| One ninth part of 40 acres of land, specified in said inventory, | 155,55 |
| *James Mather's* promissory note, specified in said inventory, | 1100,00 |
| Two third parts of 6595 dollars, 84 cents, secured to be paid by said *Thomas Miner*, by indenture tripartite between said *Thomas Miner*, said *Phebe Miner*, (then *Phebe Mather*,) and *Thomas Mather*, her trustee, dated *April* 5th, 1810, | 4397,23 |
| | $6652,78 |

HARVARD LAW LIBRARY

Middlesex,
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

"*Supra.   Cr.*

By legacy paid to *John Sill* under said will, by said
   *Miner*, as executor,                                    $500,00

By conveyance of said lot of 20 acres to said *S.*
   *Mather*,                                                1000,00

By conveyance of said $\frac{1}{9}$th of 40 acres,          155,55

By sundry articles of personal property, as by re-
   ceipt,                                                   420,36

By annuity due *April* 1st, 1841, in consideration of
   the conveyance of said lands,                             25,00
                                                           ─────────
                                                           $2100,91

Due to *Samuel Mather*,                                    $4551,87

Add interest from the decease of said *Thomas Mi-
   ner* to the date of the commission."

Of this claim the commissioners allowed to *Samuel Mather*
against said estate the sum of 3272 dollars, and rejected the
residue.

In the month of *March*, 1809, *Samuel Mather* of *Lyme*, in
this state, father of said *Phebe Miner*, then *Phebe Mather*,
and of said *Samuel Mather*, appellee in this case, died intes-
tate, being the owner of a large real and personal estate;
and in the division thereof among his children and heirs at
law, there was distributed to said *Phebe*, as her portion, sun-
dry lands, of the estimated value of 2250 dollars, and 50
cents, and sundry parcels of personal estate, of the estima-
ted value of 6595 dollars, and 84 cents.

On the 25th of *April*, 1810, *Thomas Miner*, *Phebe Mather*
and *Thomas Mather*, her brother, in contemplation of a mar-
riage between said *Thomas Miner* and said *Phebe*, executed,
under their respective hands and seals, an indenture tripartite,
containing the following stipulations: "Whereas a marriage
is intended to be had and solemnized between said *Thomas
Miner* and *Phebe Mather*, in consideration whereof and of
the sum of 6595 dollars, and 84 cents, received by the hand
of said *Thomas Mather*, by said *Thomas Miner*, in money
and chattels, as the marriage portion and estate of said *Phebe*,
being the same money and chattels as were distributed to her
in the settlement of her father's estate, said *Miner*, on his
part, hereby covenants with said *Thomas Mather*, that in case
the said *Miner* should survive said *Phebe*, he will, within six

Middlesex,
July, 1843.
_____
The Fourth
Ecclesiastical
Society in
Middletown
v.
Mather.

months from her death, pay to said *Thomas Mather*, in trust for the purposes hereinafter expressed, two third parts of said sum of 6595 dollars, 84 cents, received, as aforesaid, as the marriage portion of said *Phebe*. And in case said *Phebe* should survive said *Thomas Miner*, he covenants with said *Thomas Mather*, that in that event, the whole of said sum of 6595 dollars, 84 cents, received as aforesaid, shall be paid to said *Thomas Mather*, within six months from the death of said *Miner*, in trust for the purposes hereinafter expressed. And said *Thomas Mather*, on his part, hereby covenants with said *Phebe*, that he will use all proper means to collect the sums which may become due, under the aforesaid covenants, from said *Thomas Miner* ; and when collected, he will, in case said *Miner* shall survive said *Phebe*, pay the same to her executors or administrators, to be distributed to her heirs or legatees according to law ; or that he will pay the same to such person or persons as said *Phebe* shall, by an instrument under her hand and seal, in the form of her last will and testament, appoint, to receive the same for their use ; and this the said *Thomas Mather* covenants with the said *Phebe* to perform, although said instrument shall be executed during the existence of said marriage. And said *Thomas Mather* further covenants with said *Phebe*, that in case she shall survive said *Miner*, he, said *Mather*, will pay to her, said *Phebe*, such sums as he shall collect from the estate of said *Mather*, in virtue of the aforesaid covenants of said *Miner*. And said *Phebe Mather*, on her part, covenants with said *Thomas Mather*, that in case she shall survive said *Miner*, she will, on receiving the whole of the sum secured by the aforesaid covenants of said *Miner*, to be paid for her use as aforesaid, release all claims for thirds in the personal estate of said *Miner*."

Pursuant to the provisions of this indenture, Dr. *Miner* received, in money and chattels, the sum of 6595 dollars, 84 cents, distributed to said *Phebe* in the settlement of her father's estate. Shortly afterwards, *viz.* on the 8th of *May,* 1810, the contemplated marriage between them was solemnized, from which time they lived together in the marriage relation, until her death.

During the marriage, *viz.* on the 10th of *August*, 1810, said *Phebe*, by way of exchange with *James Mather*, convey-

Middlesex,
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
v.
Mather.

ed to him a part of the lands distributed to her in the settlement of her father's estate, to the use of which her husband was entitled, by virtue of the marriage; for which *James Mather* then conveyed to her certain land owned by him, and for the balance he made and delivered to her his promissory note, dated the 31st of *August*, 1810, for the sum of 1100 dollars; which note was kept by her, from the time of the delivery thereof until her decease; and after her decease, it was found by Dr. *Miner*, in one of her drawers. The amount due thereon was subsequently received, by Dr. *Miner*, from *James Mather*, in the settlement between them, and appropriated, by Dr. *Miner*, to his own use.

On the 18th of *January*, 1811, said *Phebe* made her last will and testament, in the following words: "Thinking proper, and being desirous, of leaving the use of all the estate to which I may be entitled, to my beloved husband, Dr. *Thomas Miner*, during his life, provided he should survive me, I do give and devise to my said husband all the real estate of which I may die seised, during his natural life. I also give and devise to my said husband, during his life, the use and improvement of all that personal estate, including money at interest and bank stock, which was secured for my benefit, by an indenture of three parts, entered into by my said husband on one part, by myself on one other part, and by my brother, *Thomas Mather*, on the other part, before my marriage: and I also give and devise to my said husband, during his natural life, the use and improvement of all other personal estate belonging to me, or to which I may be entitled: provided, nevertheless, that my said husband pay out of my personal estate a legacy herein-after mentioned, to my nephew, *John Sill*, provided the contingency shall happen on which the same shall become due: it being my will and intention, that my said husband do not expend the principal of my personal estate, but that he receive all the interest and use arising from the same, during his life. My will further is, and I do give and devise to the child or children which I may have, and which may survive me, all my said real or personal estate, and to their heirs forever, to be paid and delivered to such child or children, immediately after the death of my said husband. And in case I should not have any child or children who should survive me, then my will is, and I do give to my

HARVARD LAW LIBRARY

*Middlesex,*
*July, 1843.*

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

nephew, *John Sill*, son of *Thomas Sill* and my sister *Mehitabel Sill*, 500 dollars, to be paid to my said nephew, when he arrives at the age of twenty-one years. And also, in case I should not have any child who should survive me, then my will is, and I do give and devise to my brother, *Samuel Mather*, and to his issue, all my said estate, real and personal, after deducting said legacy to my said nephew, to be delivered to my said brother and his issue, after the decease of my said husband, to whom I have, as before expressed, given the use, during his life. The said legacy and devises to my said nephew, and my brother *Samuel*, and his issue, however, as before expressed, are on condition that I do not leave any child or children; and if I leave any child, the said legacies and devises to them, are void. And I do appoint my said husband, *Thomas Miner*, executor of this my will."

On the 5th of *February*, 1811, said *Phebe* died, without issue. Dr. *Miner* accepted the trust of executor, and gave bond, with surety, as by law required, for the faithful performance of that trust. The court of probate approved said will, and limited the term of six months from the 17th of *June*, 1811, for creditors to present their claims; of which due notice was given. The executor caused an inventory to be made, under the hand of appraisers for that purpose duly appointed, which was returned to and accepted by the court of probate. This inventory comprised two parcels of land, valued at 1155 dollars, 55 cents; a note of *James Mather*, dated 31st of *August*, 1810, for 1100 dollars; and two third parts of 6595 dollars, 84 cents, being a sum secured to be paid to the executors of the deceased, by the indenture dated the 25th of *April*, 1810, amounting to 4397 dollars, 23 cents. If there were any debts against the estate of said *Phebe*, Dr. *Miner* duly paid them. He also paid the legacy to *John Sill*, mentioned in her will, when it became due and payable. He also conveyed to *Samuel Mather*, the residuary devisee and legatee of said *Phebe*, and the appellee in this case, his interest in the lands specified in the inventory, in consideration of the sum of 25 dollars, to be paid to him, (Dr. *Miner*,) annually, during his life, by *Samuel Mather*. This annuity was regularly paid, by *Samuel Mather*, except that which was due for the last year of the life of the annuitant, which was not paid. The real estate embraced in said inventory, was a part of the

real estate distributed to said *Phebe* from her father's estate; the note of *James Mather* therein mentioned, was the note given by him for the land conveyed to him as aforesaid; and the sum of 6595, dollars, 84 cents, embraced in said inventory, was the same as that specified in said indenture.

On the 22nd of *December*, 1825, Dr. *Miner* made his last will and testament, by which he, in the first place, made provision for the comfortable support of his parents, during their lives. He then gave to his friend, *William Tully*, M. D., his library and manuscripts, and the copy-right of all his writings, whether published or not. Thirdly, he gave to his cousin, *Hannah Brainerd*, the use and improvement, during her life, of all his estate remaining after the two preceding bequests should be complied with. The will then proceeded as follows: "Fourthly, after the decease of my cousin, *Hannah Brainerd*, and after all other legacies are paid or provided for, I give the remainder of my estate to the *Congregational* or *Presbyterian Society* in *Westfield* in *Middletown*, the said society to appropriate annually the interest of it for maintaining the preaching of the gospel. Fifthly, as it is very uncertain whether I shall leave much property of any description, it being probable it will be but trifling, I authorize my executor to sell any of my estate, whether real or personal, or the whole of it, and invest it in such a manner, that my legatees may have the avails, according to the spirit and intent of this instrument."

Dr. *Miner* died, on the 23rd day of *April*, 1841; and on the 8th of *May*, 1841, his will, being duly proved, was approved by the court of probate; and *Samuel Mather*, appellee, was thereupon appointed administrator with the will annexed, who accepted the trust, and gave bond for the faithful execution thereof, as by law required. *The Fourth Ecclesiastical Society* in the town of *Middletown*, who are the appellants in this case, is the same society referred to and intended in Dr. *Miner's* will. His estate was represented insolvent, commissioners were appointed, and a time was limited for the creditors to present their claims; within which time, *Samuel Mather*, appellee, presented to the commissioners the claim above stated.

When Dr. *Miner* died, there were in his pocket-book sundry papers, placed there by him before his death, and found there

*Middlesex, July, 1843.*

The Fourth Ecclesiastical Society in Middletown
*v.*
Mather.

HARVARD LAW LIBRARY

*Middlesex,*
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

afterwards, among which was, in one fold or apartment thereof, a paper envelope, on the outside of which was written, in his hand-writing, these words : " Papers relating to my wife's estate ;" in which envelope was contained Mrs. *Miner's* will, the antenuptial indenture, and a paper in the hand-writing of *Stephen T. Hosmer ;* and in another fold or apartment of the pocket-book, were certificates of bank-stock, issued to, and owned by, said *Phebe,* before her marriage, and also certificates of bank-stock owned by said *Thomas Miner,* and standing in his name, at the time of his death. The bank-stock so owned by said *Phebe,* stood in her name until the death of Dr. *Miner ;* and the dividends thereon, after her death, were received by him until his death.

On the 15th of *July,* 1817, Dr. *Miner* delivered to said *Samuel Mather* certain personal property, and took from him the following receipt : " Received of Dr. *Thomas Miner,* executor of the last will and testament of my sister, *Phebe Miner,* deceased, sundry articles of furniture, amounting in value to 420 dollars, 36 cents, in part of her personal estate given by said will to myself and my heirs, subject to a life estate therein of said Dr. *Thomas Miner.* It is understood, that no interest is ever to be computed on said sum ; but, at the decease of said *Thomas Miner,* the sum aforesaid is to apply as aforesaid. *Middletown, July* 15th, 1817.

[Signed.]   *Samuel Mather."*

Upon these facts and this evidence the case was reserved for the advice of this court as to what judgment ought to be rendered.

*Baldwin* and *Tyler,* for the claimant, (*Samuel Mather,*) after remarking, that there was no question, in this case, as to the *real* estate, which had been disposed of, by a conveyance from Dr. *Miner* to *S. Mather,* in consideration of a life annuity, which had been regularly paid, except 25 dollars, admitted to be in arrear, contended, 1. That by virtue of the antenuptial contract, the money and chattels of *Phebe Mather,* amounting to 6595 dollars, 84 cents, became vested in Dr. *Miner ;* and he, by his covenants, became liable to pay to *Thomas Mather,* as trustee, two thirds of that sum ; who, by the covenants on his part, was to pay over the same to the executor of said *Phebe,* as her estate, to be distributed to her

heirs according to law, or to such person or persons as she should, by her last will and testament, *appoint to receive it.*

*Middlesex,*
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

2. That by the will of Mrs. *Miner, Samuel Mather,* as residuary legatee, after her death without issue, and the termination of Dr. *Miner's* life estate, became entitled to such two thirds.

3. That Dr. *Miner,* as executor and tenant for life, became the direct trustee of *S. Mather.*    2 *Madd. Chan.* 1, 2.    2 *Sto. Eq.* 327. & seq.

4. That *S. Mather,* as residuary legatee, is entitled also to the note of *James Mather* for 1100 dollars.    In the first place, this being *a chose in action,* is not within the cases of *Griswold* v. *Penniman* & al. 2 *Conn. R.* 564. and *Fitch* v. *Ayer,* 2 *Conn. R.* 143.    Nor is it governed by *Whittlesey* v. *Mc-Mahon,* 10 *Conn. R.* 137., as there was no antenuptial contract in that case; and besides, the interests of creditors were there concerned.    Secondly, the note was never reduced to possession, by Dr. *Miner,* in the character of *husband,* but in the character of *trustee.    Clancy,* 132 to 136.    *Reeve's Dom. Rel.* 91. 164.    20 *Pick. R.* 524. 526.    Thirdly, the consideration of the note was the avails of her real estate inherited from her father, and was made payable *to her.* Fourthly, the note was kept by Mrs. *Miner,* in her possession, from the time it was given until her death.    Fifthly, Dr. *Miner* has always treated this, as well as the money and chattels in question, as her separate property.    He inventoried this property as hers, in 1811.    Six years afterwards, he took a receipt from *S. Mather* for sundry articles of furniture "in part of her personal estate."    The papers found in his pocket-book and the declaration in his will as to the small amount of his property, show, that he considered his interest in the trust estate as limited to his life.

5. That the claim of *S. Mather* for the two thirds of 6595 dollars, 84 cents, is not barred by the statute of limitations, because *Thomas Mather* failed to present it within the time limited by the court of probate.    This claim was not payable until after the death of Dr. *Miner;* and the statute does not attach upon a debt before it is due.    He, by the provisions of the will and as executor of his wife, was entitled to hold the property, during his life; and neither *Thomas Mather,* nor any other person, had power to take it from him.    Besides,

*Middlesex,*
*July, 1843.*

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

Dr. *Miner,* under the will, became, as has been shown, a direct trustee of *S. Mather ;* and it is a well established rule, that no length of time bars a direct trust, as between trustee and *cestui que trust.* 2 *Sw. Dig.* 109. 1 *Madd. Chan.* 446. and cases cited *ibid.*

*Hungerford* and *Wightman,* for the appellants, contended, 1. That no recovery could be had, in this case, for *James Mather's* note, as it vested, when given, absolutely in Dr. *Miner.* Choses in action, accruing to the wife during coverture, vest absolutely in the husband. 1 *Sw. Dig.* 28. *Reeve's Dom. Rel.* 60. *Fitch* v. *Ayer,* 2 *Conn. R.* 143. 145. *Griswold* v. *Penniman,* 2 *Conn. R.* 564. *Cornwall* v. *Hoyt,* 7 *Conn. R.* 420. *Whittlesey* v. *McMahon* & al. 10 *Conn. R.* 137. *Morgan* v. *The Thames Bank,* 14 *Conn. R.* 99. Nor was it in the power of Dr. *Miner* to give the note to his wife, so as to make it her property. *Dibble* v. *Hutton,* 1 *Day* 221. *Butler* v. *Buckingham,* 5 *Day* 492. 1 *Sw. Dig.* 38, 9. But in point of fact, he did not give her the note. He neither transferred nor delivered it to her.

2. That no recovery can be had, by *Samuel Mather,* or by *Thomas Mather* in his behalf, for any part of the 6595 dollars, 84 cents ; this claim being barred by the statute of limitations. Within six months after his wife's decease, Dr. *Miner* was bound, by his covenants in the indenture, to pay to *Thomas Mather,* as trustee, two third parts of said sum ; and *Thomas Mather* was bound, by his covenants, to *collect* the money from Dr. *Miner,* and pay it over according to her appointment. The will of Mrs. *Miner* is in conformity with the covenants in the indenture, and adapted, as well as designed, to carry them into effect. She gives her husband the use for life, and directs the principal to be paid over, after his decease, to *Samuel Mather.* Obviously, *Thomas Mather,* as trustee, was to take the fund and hold it ; was to pay the *use* to Dr. *Miner,* during his life ; and after his decease, was to pay the *principal* to *Samuel Mather.* Nor did the appointment of Dr. *Miner,* as executor, suspend the power of *Thomas Mather* to enforce the collection. The interest of an executor in the personal estate of the testator, is temporary and qualified. 1 *Sw. Dig.* 444. *Toll. Exec.* 133. Mrs. *Miner* did not appoint her husband executor, to defeat the arrangement

*Middlesex,*
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

regarding the trust estate. As the money was not collected of Dr. *Miner,* nor any claim exhibited, within the time prescribed by the indenture in one case, and by the statute in the other, it is evident from his conduct and the provisions of his will, that he has, for a long time, considered the property as his own.

3. That if *S. Mather* is entitled to any part of this fund, yet as he has not appealed from the decision of the commissioners, he cannot recover in the superior court more than they have allowed him.

CHURCH, J. The appellants object to the allowance, by the commissioners, of the claim of *Samuel Mather,* on the ground, that it was barred by the statute of limitations, during the life-time of the deceased.

The objection is founded upon the antenuptial agreement made between the late Dr. *Thomas Miner* and his then intended wife, *Phebe Mather,* and her trustee, *Thomas Mather.* In that agreement Dr. *Miner,* who, in contemplation of marriage, was about to receive a certain amount of property from the wife, covenanted, among other things, that he would pay to the trustee two thirds of 6595 dollars, 84 cents, within six months from the death of his wife, should he survive her. The marriage was consummated, and soon after, the wife died; and by her last will and testament, she bequeathed to her husband the use and improvement of all her estate, during his life, subject to the payment of a legacy of 500 dollars to her nephew.

The argument of the appellants is, that Dr. *Miner,* the husband, by his agreement, was bound to pay *Thomas Mather,* the trustee, the principal of all the property received by him at his marriage, (reserving the one third thereof,) within six months from the death of his wife; that the covenant on his part was broken, upon his failure to do this; and that the statute of limitations began to run upon the claim of the trustee from that time, and now has barred it. If there had been no will of *Phebe Miner,* or if no present interest had been bequeathed by it to Dr. *Miner,* the husband, so that he was not, by virtue of it, vested with a right to the whole estate, during his life, there would have been weight in this argument. But, by the provisions of the will, Dr. *Miner,* instead of being under his obligation to deliver up two thirds of his wife's

HARVARD LAW LIBRARY

*Middlesex,*
*July, 1843.*

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

property to her appointees or legatees, as provided by the tripartite covenant, within six months from her death, was, by virtue of her will, entitled to retain and use the whole of it, during his life ; and it was not until after his death, that *Samuel Mather* became entitled to the estate, as legatee. The rights and duties of *Thomas Mather*, as trustee under the agreement, now ceased ; and his only remaining right was, to make demand upon Dr. *Miner's* estate, in behalf of the legatee.    And no statute of limitations, until after this event, could affect the claim.

There is no doubt, therefore, but the claimant, *Samuel Mather*, has a right to receive from the estate of Dr. *Miner* a sum of considerable amount.    As a part of the amount claimed, the commissioners have disallowed the money which was received by Dr. *Miner* upon the *James Mather* note, being 1100 dollars.

This note was given during coverture, by *James Mather* to *Phebe Miner*, the wife, in consideration of an exchange of lands made between them, with the husband's assent.    It is quite unnecessary for us now to examine the state of the common law regarding the right of the husband to choses in action accruing to the wife during coverture ; and whether the husband may sue alone, or must or may join his wife as plaintiff, in an action to recover them ; because our own courts, by a uniform course of decisions, founded, as they believed, upon the principles of the common law, have holden, that such a chose in action vests absolutely in the husband ; and such is the settled law of this state.    *Fitch* v. *Ayer*, 2 *Conn. R.* 143–5.    *Griswold* v. *Penniman, Id.* 564.    *Cornwall* v. *Hoyt*, 7 *Conn. R.* 426.    *Beach* v. *Norton*, 8 *Conn. R.* 71. *Whittlesey* v. *McMahon*, 10 *Conn. R.* 137.    *Morgan* v. *The Thames Bank*, 14 *Conn. R.* 99.    1 *Swift's Dig.* 98.    *Reeve's Dom. Rel.* 60.    The note of *James Mather*, when it was executed, became the property of Dr. *Miner*.

But, it is claimed, notwithstanding, that as this note was found, upon the death of the wife, in her drawer, and thus in her possession, and was inventoried by Dr. *Miner* as a part of her estate, it must now be considered and treated as having become her property, by gift from her husband ; and thus Dr. *Miner*, the husband, became responsible for its amount to her residuary legatee, *Samuel Mather*.    Aside from very

*Middlesex*,
July, 1843.

The Fourth
Ecclesiastical
Society in
Middletown
*v.*
Mather.

strong opposing evidence, furnished by the fact, that the husband treated this note as his own, and actually received its avails, in his settlement with *James Mather ;* we think, that no contract or agreement between Dr. *Miner* and his wife could be made, which, in legal effect, would transfer the property or interest in the note in question to the wife, by way of gift or sale. In the case of *Dibble* v. *Hutton,* 1 *Day* 221. and which has never been overruled in this state, it was adjudged, unanimously, by the supreme court of errors, then consisting of the governor, lieutenant-governor and council, that an agreement between husband and wife was void, and could not be enforced, even in equity. Indeed, that was a case in which the wife claimed, that her husband, for a valuable consideration, had transferred notes to her, as her own estate, and which she had kept in her drawer, as her own, until his death, and therefore cannot be distinguished from the claim of *Samuel Mather* here. That case was determined upon the well known principles of the common law. *Co. Litt.* 112. 1 *Bla. Com.* 442. And the court there seemed to fear, that the innovations, which courts of equity in *England* were making upon the sacred unity of the persons of husband and wife, might, as manners should lead the law, and law the manners, invade our own jurisprudence ; and against such an event, they intended to protect us. If more loose or liberal views of the nature and legal effect of the marriage relation, have been entertained, in later times, either by the legislature or the public ; until they shall be made to bear upon the courts, by some definite legislative act, we must abide by the rules of the common law, which were, without doubt, recognized by all, as long ago as the time of the transaction in question.

We are satisfied, therefore, that the commissioners properly rejected this part of the claim presented, and as properly allowed the residue : and we advise that the report be accepted and established.

It was suggested, on the argument, that because the creditor, in this case, did not appeal, he could not, before the superior court, recover a greater sum than was allowed by the commissioners, even if he was legally entitled to the rejected claim of 1100 dollars. Although an opinion from us, upon this question, is not necessary now ; yet, as it is a question of practice, growing out of the recent statute giving jurisdiction

to the superior court in cases of this nature, we shall depart from our usual habit and decide it. We think, by the appeal, the whole claim exhibited to the commissioners, but without additions to it, was open for examination and allowance ; and that the report of the commissioners was entirely superseded, by the appeal, as in the cases of ordinary appeals from one court of common law to another. A different construction of the statute would throw nearly all the hazard of a second trial upon the appellee, and the only question which would remain for him to try, would be, his demand having been in part rejected, whether it should be still further reduced? We think, this was not the intention of the legislature, but rather, that the whole claim presented, might be examined and determined, on the appeal, as if tried *de novo.* Such was the course taken, and without objection, on the trial of the case of *Hammond* v. *Gilmore's* admr. 14 *Conn. R.* 480., and, as we believe, in other cases.

In this opinion the other Judges concurred.

Report of commissioners established.