## ASHBEL E. BARTRAM, ADMINISTRATOR, vs. WILLIAM P. HOPKINS, ADMINISTRATOR.

Third Judicial District, New Haven, Jan. Term, 1899.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 2799 of the General Statutes prescribes that any policy of life insurance for the benefit of a married woman shall inure to her separate use, provided the annual premium thereon shall not exceed $300, and that the amount of any premium in excess of $300, with interest, shall inure to the benefit of the creditors of the person paying it. This statute was first enacted in 1850, when the premium limit was fixed at $150 and so continued until 1871, when it was raised to $300 and the statute was re-enacted in substantially its present form. In an action by the administrator upon an insolvent estate to recover in behalf of creditors the aggregate amount of annual premiums in excess of $300, paid by the husband on five policies of life insurance taken out for the benefit of his wife, three of which were issued before 1871, it was *held :* —

1. That the Act in question was an enabling statute, changing the common law and protecting, to a limited extent, gifts made to a married woman in the form of life insurance, from seizure by the creditors of the donor.
2. That all premiums in excess of the statutory amount were not protected, but were available to the creditors of the person paying such excess; and that it was not essential to a recovery that the plaintiff should show that payment of any premium was made in fraud, actual or constructive, of the intestate's creditors.
3. That the statute applied, although the annual premium upon no one of the policies exceeded the statutory amount.
4. That the Act of 1871 enlarging the limit of protection in favor of the married woman, applied to all the policies in suit, although three of them were issued prior to that date.
5. That the validity and amount of claims against the insolvent estate was a matter which had been determined by the commissioners, and was not open for retrial in the present action; especially as the alleged creditor was not a party to the suit.

Whether the amount recoverable in cases of this kind is to be determined by the excess of gross, or of net, annual premiums, *quære.*

Where the judgment appealed from is based entirely upon an agreed finding of facts, no question of law not presented by such finding will be considered by this court.

Argued January 17th—decided March 9th, 1899.

ACTION to recover, for the benefit of creditors of a deceased husband, the amount of life insurance premiums paid by him in favor of his wife, in excess of $300 annually, brought to the Superior Court in Fairfield County where the defendant's demurrer to the complaint was overruled, *Thayer, J.,* and the cause was afterwards tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by both parties for alleged errors in the rulings of the court. *No error.*

The material facts alleged in the pleadings and found by the court upon the agreement of the parties, are in substance these: The intestate died in 1894, and his estate was represented to be, and was settled as, an insolvent estate. The unsecured claims, preferred and general, presented and allowed against his estate, amounted to $11,531.09. The assets of the estate which came into the hands of the plaintiff have been exhausted in paying the preferred claims and a certain percentage upon the general claims, leaving a deficiency of $2,227.60 due to the creditors of the intestate. The further expenses of settlement of the estate, including the prosecution of this suit, will amount to $325. The report of the commissioners on said estate was accepted on June 8th, 1895, and no appeal has been taken therefrom.

The commissioners allowed interest on the claims presented, to the 25th day of April, 1894, only, which was the day of said Alfred Hopkins' decease. On or about the 1st day of October, 1895, the administrator paid over to the general creditors the percentage due them, of 80.3 per cent; leaving due to them the said balance of $2,227.60. If the plaintiff recovers in this action and said estate in fact proves to be solvent, or is hereafter settled as such, the interest upon the said deficiency from the 1st day of October, 1895, to the date of this judgment (November 10th, 1898), will be $415.47. If the creditors in that event are entitled—without respect to the report of said commissioners—to recover interest upon their claims during the *interim* from the death of said Alfred Hopkins to the date of such payment to them by the administrator of said 80.3 per cent, the interest during that period

(computed on all claims allowed except those of the Connecticut National Bank and L. M. Hopkins) amcunts to $372.60.

Among the claims allowed by the commissioners on said estate was one in favor of the Connecticut National Bank of Bridgeport, on sundry promissory notes made by said Alfred Hopkins during his lifetime, and indorsed by L. M. Hopkins ; all of which matured after the death of the decedent. The commissioners allowed no interest on said notes, but allowed said bank, as against said estate, the whole principal of said notes, amounting to $6,825. The estate having paid only 80.3 per cent on said amount, after the administrator had paid said dividend on the general claims, and made his account to the court for the settlement of the estate up to that time—about October 1st, 1895—said L. M. Hopkins paid to said bank the balance due on said notes, including interest on the same to said date, and thereupon took up and ever since has held and now holds and owns said notes. The interest paid by L. M. Hopkins to said bank (by compromise) and not included in the amount allowed said bank by the commissioners, was $405.47 ; but the whole amount of the interest which accrued on said notes from their several dates of maturity to October 1st, 1895, was $532.09. Said L. M. Hopkins is demanding of the plaintiff payment of said interest.

A note for $150, made by said Alfred Hopkins in his lifetime but maturing after his decease, to wit, on May 3d, 1894, was indorsed by and allowed at its face to L. M. Hopkins, by said commissioners. This note L. M. Hopkins took up and paid to Marsh, Merwin & Lemmon at the date of its maturity, and ever since has held and now holds and owns said note. On this note the commissioners allowed, and the plaintiff as administrator paid to said L. M. Hopkins, the sum of $137.96, leaving the balance due said L. M. Hopkins. The interest accruing upon that note from its maturity to October 1st, 1895, was $12.67; which interest the said L. M. Hopkins is demanding of the plaintiff. The notes above referred to were presented to the commissioners after their maturity.

At the death of the intestate his life was insured, for the

benefit of his wife, by five insurance policies to the amount of $22,000, the proceeds of which were paid to her shortly after his death. The policies were as follows : —

One in the Connecticut Mutual Life Insurance Company, issued April 11th, 1864, for $5,000. Soon after taking out this policy it was exchanged by consent for a " ten year policy " payable to the same beneficiary. The gross annual premium due on this policy was $281.75. One in the Ætna Life Insurance Company, issued April 20th, 1870, for $1,000 payable at death of assured, the gross annual premium upon which was $30.71. One in the Berkshire Life Insurance Company, issued December 31st, 1870, payable twenty-five years from date, or at prior death of assured, for $5,000, the greatest gross annual premium upon which was $223.10. One in the Berkshire Life Insurance Company issued February 28th, 1874, payable at death of assured for $5,000, the greatest gross annual premium upon which was $189.80. The last one was a policy of the Northwestern Mutual Life Insurance Company, issued July 15th, 1878, for $4,000, payable at the death of the assured, the greatest gross annual premium upon which was $174.76.

The total amount of the excess of gross premiums over $300 per year upon said policies, is $6,512.45. The interest upon the same from the dates of the accruing gross premiums, to the date of the finding, is $5,567.97. The total of the amounts of excess actual cash payments over $300 per year. is $3,498.94. The interest upon the same is $2,918.70.

All the premiums upon said policies were paid by the intestate in his lifetime, from his own funds. This insurance money was not included in the original inventory filed by the plaintiff, but was called to his attention since by a creditor of the intestate. The plaintiff, before bringing this suit, made demand upon the widow of the intestate to pay to him so much of the insurance money as was needed to pay in full the creditors of the estate and the additional expenses of settlement, but she at all times refused to comply with said demand.

The grounds of the demurrer to the complaint, omitting

one which was obviated by an amendment, were in substance these: (1) It does not appear that a premium in excess of $300 per annum has been paid upon any one of said policies. (2) It does not appear that the intestate was insolvent or in embarrassed circumstances when he made said payments, or that they were made in fraud of creditors. (3) It does not appear that the intestate, when said payments were made, was indebted to any of the persons who were creditors of his at his decease, or that any of these last were prejudiced by said payments. (4) It does not appear that said payments of premiums were made as gratuitous payments in favor of the wife, or that the intestate did not receive an adequate and valuable consideration from his wife for said payments.

The second defense set up in substance the following facts: (1) The policies of insurance were issued and the payment of premiums made, at a time when the intestate was solvent and unembarrassed in his circumstances, without fraud or prejudice to his then or subsequent creditors, and while having sufficient estate to satisfy all his obligations. (2) They were obtained as a reasonable provision for the support and maintenance of his wife, upon an agreement with her founded upon a valuable consideration flowing from her to the intestate. (3) The persons who were creditors of the intestate when he died, were not creditors of his when the policies were issued nor during the time covered by the payment of premiums sought to be recovered in this action.

This defense was demurred to on the ground, in substance, that the facts therein set up, if true, were not a defense to the action. The demurrer was sustained by *Robinson, J.*, mainly on the ground that the questions raised by it had already been decided adversely to the defendant by *Thayer, J.*, in passing upon the demurrer to the complaint.

Upon the argument the plaintiff claimed: " 1. That all the questions raised by the defendant had been heretofore specifically passed upon in the decisions of the demurrers on file. 2. That the defendant cannot now raise the question that only the payments made upon the policies issued since the passage of the Act of 1871 are involved, because, (*a*) The question

could only be raised by demurrer; (*b*) that if the three policies issued before the Act of 1871 do not come within the Act, the defendant contends they are to come within the principles of the common law, and this question has been determined in the demurrers heretofore filed. 3. That the statute includes these three policies, and without it the widow would take only what was left after satisfying all the creditors. 4. That the judgment should be made out of the following items: —

| | |
|---|---|
| *a.* Unpaid balance of claims as allowed by commissioners, | $2,227.60 |
| *b.* Interest on notes indorsed by L. M. Hopkins, from maturity to Oct. 1st, 1895, | 532.09 |
| *c.* Interest on balance of claims allowed from April 25th, 1894, to Oct. 1st, 1895, | 372.60 |
| *d.* Interest on unpaid balance from Oct. 1st, 1895, to Nov. 10th, 1898, | 425.47 |
| *e.* Additional expense of settling the estate, | 325.00 |
| *f.* Interest on Marsh, Merwin & Lemmon note, from maturity to Oct. 1st, 1895, | 12.67 |
| Total, | $3,885.43 " |

The court sustained claim 1, except as to the question referred to in claim 2 *b*, and claim 2 *b* and claim 4 *a* and *e*. The court overruled claim 2 *a*, and claim 4 *b*, *c*, *d* and *f*, and did not pass upon claim 3.

Upon the argument the defendant claimed: "1. All of the matters set forth in the demurrer filed October 1st, 1897, and the 2d defense filed April 14th, 1898 [are relied upon]. 2. That the three policies issued April 11th, 1864, April 20th, 1870, and December 31st, 1870, are not within the complaint, because issued prior to the Act of 1871, upon which Act the plaintiff alone seeks recovery. 3. That if the gross premiums are to be the basis of payment, then the policy in the Connecticut Mutual, dated April 11th, 1861, is to be governed by the common law, since the excess of premiums on this policy are beyond the $150 limit provided by the statute, § 26, p. 304, Revision of 1866, at the time the policy was issued, and hence there can be no recovery of such payments. 4. That

if the net premiums are to be the basis of payment, then this policy is to be governed by the statute then in force, and the beneficiary is protected by the statutory limit of $150. 5. That the policy in the Ætna Life Ins. Co. dated April 20th, 1870, is controlled by the statute then in force, and the beneficiary is protected by the statutory limit of $150. 6. That the policy in the Berkshire Co., issued December 31st, 1870, was controlled by the principles of the common law, since both gross and net premiums exceeded the limit of the statute then in force. 7. That if the premiums of these policies are to be added together, since the excess exceeds the limit of the statute then in force, the matter is controlled by the common law, and there can be no recovery. 8. That the only policies which can be claimed to fall within the Act of 1871, are the Berkshire Life, issued February 28th, 1874, and the Northwestern Mutual, issued July 15th, 1878; and in neither does the excess of payments exceed $300, and there can be no recovery. 9. If these payments on these policies are to be added together, the excess upon the net payments is $66.74, plus the interest on the payments, $56.60, a total of $125.34, for which sum alone judgment can be rendered. 10. If the excess upon the gross premiums is to be considered upon these two policies, it would be $1,011.06 plus the interest on these payments of $509.92, a total of $1,520.98, for which sum alone judgment can be rendered."

The court ruled as to claim 1, that it was bound by the judgment upon the demurrers on file; it did not pass upon claim 2; as to claims 3 to 10 inclusive, that it was bound by the demurrers heretofore decided, which determined that the creditors, under the common law, could take all of the recovery on the policies, and that the premiums were to be taken together on all the policies and not on one alone, and overruled these claims because bound by the judgment upon said demurrers.

The court found that the total balance required to pay claims in full and cost of settlement of the estate, was $3,228.72, and rendered judgment for the plaintiff for that sum.

The reasons of appeal filed by the defendant are based

upon the rulings of the court upon the demurrers, and upon his claims made upon the argument as set forth in the record; and the reasons of appeal filed by the plaintiff relate to the rulings of the court upon his claims for interest, as set forth in the record.

*Stiles Judson, Jr.*, and *William P. Hopkins*, for the defendant.

In absence of fraud, actual or constructive, the defendant at all times had complete right and title to the entire proceeds of any and all of the policies in question—and this by virtue of the common-law right of gift or conveyance on the part of the husband, and· of the vested interest under the contract of insurance in favor of the wife. The statute is primarily for the benefit of the widow, to enable her to hold certain property which but for that statute, might inure to the benefit of the creditors of her husband, if it afterwards was demonstrated that the husband was insolvent when the premiums were paid, and the assets diminished, to the prejudice of his then creditors. In the absence of proof to the contrary, the law will presume that the decedent was not insolvent when these premiums of insurance were paid by the assured. But if these premiums were paid for the benefit of the wife, *for a valuable consideration* flowing from her, as alleged in the special defense filed, then under no known principle of law can the decedent's creditors reap the benefit of such payments. Inasmuch as no one who was not a creditor at the time of the payment of the premiums, could possibly be prejudiced by such payments, the statute ought in no event to be construed to include subsequent creditors. 1 Sto. Eq. § 367; *Bank* v. *Hume*, 3 Mackey (D. C.), 383; *Pullis* v. *Robison*, 5 Mo. App. 548; *Baron* v. *Brummer*, 100 N. Y. 372; *Stokes* v. *Amerman*, 121 id. 344; *Fearn* v. *Ward*, 65 Ala. 35; *Charter Oak Ins. Co.* v. *Brent*, 47 Mo. 419; *Eppinger* v. *Canepa*, 20 Fla. 262; *Cole* v. *Marple*, 98 Ill. 65; *Pence* v. *Makepeace*, 65 Ind. 360; *Thompson* v. *Cundiff*, 11 Bush (Ky.), 569; *Stokes & Son* v. *Coffey*, 8 id. 536; *Pace* v. *Pace*, 19 Fla. 452. The cases cited are those which have arisen

under statutes similar to ours.   A compilation of the statutes
of the various States upon the subject is to be found in Rich-
ards on Ins. p. 576.   The object of these statutes is to protect
the widow of one who has kept up the policy for her benefit,
notwithstanding that he was indebted.   *Life Ins. Co.* v. *Webb*,
54 Ala. 688; *Hart* v. *Everall*, L. R. 2 Ch. Div. 266; *Cross* v.
*Armstrong*, 44 Ohio St. 620; *Johnson* v. *Alexander*, 123 Ind.
579; *Loper* v. *Paxton*, 48 Ohio St. 270.   In the absence of
the statute, the husband could make a valid gift to his wife,
of insurance or any other species of property.   *Riley* v. *Riley*,
25 Conn. 161; *Deming* v. *Williams*, 26 id. 232; *Jennings* v.
*Davis*, 31 id. 138; *Hinman* v. *Parkis*, 38 id. 197; *Wheeler* v.
*Wheeler*, 43 id. 507; *Darcy* v. *Ryan*, 44 id. 520.   If the plain-
tiff is legally entitled to recover at all, he can recover only
the excess paid above $300 annually on policies of insurance
issued subsequent to the enactment of 1871.   Under this
claim the amount would be $66.74, with accrued interest.

*Robert E. DeForest*, for the plaintiff.

The defendant claims that the *proviso* applies only to cases
where the insured was insolvent or in embarrassed circum-
stances at the time the excess of premiums was paid, or where
the payments were made for the benefit of the wife in actual
fraud of creditors.   This would be reading into the statute
something that it does not contain.   All that the statute re-
quires is that there shall be creditors when and after the insur-
ance money is payable, and that there shall have been an
amount of annual premiums paid in excess of $300 on that
insurance.   Even if the court below, in its rulings upon
the demurrers, erred in deciding that the *proviso* applies
to policies procured by the husband for a valuable considera-
tion flowing from the wife, such error would afford no ground
for disturbing the final judgment rendered here, as that judg-
ment was rendered upon the actual facts of this case as agreed
upon, and no such valuable consideration flowing from the
wife appears as a fact in the case.   The finding of facts thus
made by the court, must be taken as a complete statement of
all the material facts in the case and excludes the existence

Bartram, Admr., *v.* Hopkins, Admr.

of any such valuable consideration. *Taylor* v. *Keeler*, 51 Conn. 399. The statute covers all five policies. It does not say any policy of life insurance hereafter issued, but any policy "expressed to be for the benefit," etc., "or assigned to her or in trust for her." *Hine* v. *Belden*, 27 Conn. 384; *Mechanics', etc., Bank's Appeal*, 31 id. 63. As against creditors the proceeds of a life insurance policy are regarded as an accumulation of the husband's own funds, deposited by him, set apart by him, subject to his control, at least in part up to the time of his death, and which at the time of his death he seeks to turn over to his family. This our common law will not permit him to do, to the detriment of his creditors. And it is because of that common law, and to remedy it, that the statute was passed. If not for that purpose, why was it enacted it all? If, as the defense claims, the widow, in a case like this would have a perfectly good and indefeasible title to the whole of the insurance money, creditors or no creditors, assets or no assets, what need was there of such legislation? *Continental L. I. Co.* v. *Palmer*, 42 Conn. 64. The decisions of other States are based upon statutes very different from ours, and are of little value in the present discussion.

TORRANCE, J. This action is brought under § 2799 of the General Statutes, the material part of which reads as follows: "Any policy of life insurance, expressed to be for the benefit of a married woman, or assigned to her, or in trust for her, shall inure to her separate use, or in case of her decease before payment, to the use of her children, or of her husband's children, as may be provided in such policy, provided that if the annual premium upon such policy shall exceed three hundred dollars, the amount of such excess with interest shall inure to the benefit of the creditors of the person paying the premium."

The policies here in question were five in number, each of them insuring the life of the husband for the benefit of the wife, and all the annual premiums upon each of them were paid by the husband.

Upon none of the policies did the gross annual premiums

paid by the husband exceed $300. The proceeds of these policies were paid to the wife at the death of the husband, and amounted to $22,000.

The court below found that the amount of the actual cash payments made by the husband in paying annual premiums upon the five policies, in excess of $300 per year was, without interest, about $3,500, and rendered judgment against the wife for so much of that sum as would enable the plaintiff to pay the husband's debts and the expenses of settling his estate in full.

The questions arising upon the defendant's appeal will be first considered. One of the important questions thus arising is, whether the plaintiff is entitled to recover anything, in an action of this kind, unless he can show that the premium, or the excess premium, was paid in fraud, actual or constructive, of existing or subsequent creditors. This was the main point raised by the demurrer to the complaint, by the special defense, and by the claims made upon the argument.

The answer to this question depends upon the construction of the statute. The defendant claims it must be answered in the negative. This claim appears to be based mainly upon the assumption that the statute was passed solely to enable an insolvent person to make a gift of a certain amount which would be good and valid as against his creditors. The defendant, in effect, argues in this way: Prior to and independent of the statute, a solvent husband or other person could make a reasonable gift to a married woman in the shape of premiums or otherwise, which would be a valid gift as against any subsequent creditor of his; but a person who was insolvent or in embarrassed circumstances could not make such a gift; the statute as to the insolvent person was an enabling statute, and his right to make a gift was limited and conditioned by its provisions; but as to the solvent person, his right to make a reasonable gift was not affected by the statute, and therefore its provisions did not apply to such gifts made by him.

We think the defendant's assumption is not well founded. The statute was originally passed in 1850, and as it appears

in the Compilation of 1854, p. 378, reads as follows : " That policies of life insurance issued on the life of any person, expressed to be for the benefit of any married woman, whether the same be effected by herself or her husband, or by any other person on her behalf, shall inure to her separate use and benefit, and that of her husband's children, if any, as may be expressed in said policies, independently of her husband and his creditors and representatives, and also, independently of any other person effecting the same in her behalf, his creditors and representatives : Always provided, that this section shall not apply to insurance where the annual premium on the policy shall exceed the sum of one hundred and fifty dollars, unless paid from the private property of the wife." With some slight verbal changes made in the Revision of 1866, the law remained in this form down to 1871. By Chap. 25 of the Public Acts of that year, the amount that might be paid for annual premiums upon such policies was changed from $150 to $300 ; otherwise no change was made. Subsequently, at the same session of the General Assembly in 1871 (Chap. 138, § 36), the law was changed to read as follows : " A policy of insurance on the life of any person, expressed to be for the benefit of any married woman, . . . or to any person in trust for her or for her benefit, whether the same be procured by herself, her husband, or any other person, shall inure to her separate use and benefit, or, in case of her decease before payment of the same, to the use and benefit of her children, or of her husband's children, as may be provided in said policy, independently of her husband, his creditors, or representatives, or of the person procuring, assigning, or transferring the same, his creditors or representatives : *provided,* that if the annual premium on any such policy exceed three hundred dollars, an amount equal to the excess of such premium over three hundred dollars, with interest thereon, shall inure to the benefit of creditors," etc. All Acts and parts of Acts inconsistent with said Act were at the same time repealed. In the Revision of 1875 the Act was abbreviated and condensed into the form in which it now appears as § 2799 of the present revision.

We think no change in the law, as it stood in 1871, was made or intended to be made in the Revisions of 1875 and 1888. "Revisers are presumed not to change the law, if the language which they use fairly admits of a construction which makes it consistent with the former statute." *Duffield* v. *Pike, post*, p. 521. When the original Act was passed in 1850, the property rights of married women in this State were substantially those conferred by the common law, and were consequently extremely limited. At the beginning of this century this court, in *Dibble* v. *Hutton*, 1 Day, 221, held in effect that a husband could not make a gift of personal property to his wife which would be protected either at law or in equity against him or his creditors. This continued to be the law of the State down to 1857, when the case of *Dibble* v. *Hutton* was expressly overruled in the case of *Deming* v. *Williams*, 26 Conn. 226, although it had been in effect overruled in 1856 in the case of *Riley* v. *Riley*, 25 Conn. 154. In this State at common law, choses in action, which would include policies of life insurance, accruing to the wife during coverture, vested at once and absolutely in the husband. 1 Swift's Digest, p. 28; *Fourth Eccl. Soc.* v. *Mather*, 15 Conn. 587. This was the law in 1850; *Hawley* v. *Burgess*, 22 Conn. 283, decided in 1853. The Act of 1849 affected only personal estate which accrued to the wife during coverture by bequest or distribution. Compilation of 1854, p. 376.

Prior to 1850, then, the law of this State, as declared in its statutes and by its judicial decisions was, that a husband, whether solvent or not, could not make a gift to his wife, of personal property, which would be valid against him or his creditors; and a third party, whether solvent or not, could not make a gift of personal property to a married woman which would be protected as against the husband or his creditors. This was the state of the law when the original Act here in question was passed. The Act was an enabling act. It enabled the parties concerned to do what they could not do before, namely, make a gift of the prescribed kind and amount, to a married woman, which would be valid as against her husband and creditors of the giver; and to do this what-

ever might be the financial condition of the giver when the gift was made.   *Connecticut Mut. Life Ins. Co.* v. *Burroughs,* 34 Conn. 305; *Chapin* v. *Fellowes,* 36 id. 132; *Continental Life Ins. Co.* v. *Palmer,* 42 id. 60.   The Act of 1850 included policies whereon the annual premiums were paid by the giver, only when that premium was $150 or less.   In 1871 the Act was extended so as to cover all such policies, without regard to the amount of the annual premiums, with a *proviso* that if such premium exceeded $300, " an amount equal to the excess of such premium over three hundred dollars, with interest thereon," should inure to the benefit of creditors.   The statute of 1850 limited the power to make such a gift as is here in question, to cases where the annual premiums did not exceed $150, while the Act of 1871, being the one in force now, extended the limit to $300 ; and this, so far as the present question is concerned, is all the difference there is between the two Acts.   In both Acts, for one thing, we think the legislature intended to limit the amount which a husband could divert from his creditors in this particular form of gift, and to say that all given beyond the statutory amount should be liable to his creditors.   We think it had the power to do this, and its intent to exercise the power is manifest and clear.

For these reasons we are of opinion that in a case like the one at bar the plaintiff, if otherwise entitled to recover, is entitled to recover without showing that the excess payments of premiums were made in fraud, actual or constructive, of creditors.

We also think that the statute applies to a case where there are a number of policies taken out for the benefit of a married woman, although the annual premium paid upon no one of them may exceed the statutory amount.   In such case, if the aggregate of the annual premiums paid exceeds the statutory amount, the excess so paid is available for creditors.   This is the plain intent of the legislature, and to construe the law otherwise would defeat that intent.

We have no occasion to decide or to consider in this case, whether the basis of recovery in cases of this kind should be the excess of gross, or of net annual premiums, with interest;

for the court below did not pass upon this question, but adopted the excess of actual cash payments as the basis of recovery; and of this the defendant certainly has no reason to complain.

We also think that the Act of 1871 applied to all of the policies in this case, and that the trial court correctly held that the annual premiums paid upon each of them, to the extent of $300, were protected.

The defendant claims that the statute does not apply to a case where the policy of life insurance is taken out and the premiums paid by a husband, pursuant to a contract between himself and his wife upon a valuable consideration flowing from her. This was one of the points raised by the demurrer to the special defense, which was ruled adversely to the defendant. We have no occasion to decide this question here, because we think the defendant waived its consideration in the court below. After it was decided on the demurrer the parties, instead of trying the case upon the pleadings, agreed upon the facts between themselves. That statement contains no reference to the claimed agreement between the husband and wife. For aught that appears all such reference was voluntarily omitted by the defendant. She thus said in effect to the court, these are the facts, and all the facts of my case, what is the law on this precise state of facts? In this condition of things the ruling upon the demurrer to that part of the second defense setting up an agreement between husband and wife, became of no importance, because the case voluntarily presented to the court by the defendant is devoid of any such agreement. Upon the record we think the defendant waived her objection to that ruling. There is no error.

The three errors assigned upon the plaintiff's appeal are based upon the court's action in not allowing interest upon two claims of one L. M. Hopkins.

The record shows that the intestate was the maker upon sundry promissory notes upon which L. M. Hopkins was indorser. At the decease of the maker these notes were held by the Connecticut National Bank of Bridgeport, and they matured after the death of the maker. The Bank presented

these notes after their maturity to the commissioners on the estate of the intestate, who allowed the principal sums due on the notes, but no interest. No appeal was taken from the report of the commissioners. In October, 1895, the plaintiff paid to the Bank eighty per cent upon the amount allowed by the commissioners upon said notes, and subsequently L. M. Hopkins, the indorser, paid the balance due upon the principal of the notes to the Bank, and the interest upon them from maturity to October 1st, 1895, and took them up and now holds them as owner. The interest upon said notes up to October 1st, 1895, amounted to $532.09, and L. M. Hopkins is demanding that sum from the plaintiff as administrator.

The intestate at his decease was also the maker of another note upon which L. M. Hopkins was indorser, which, when it matured after the decease of the intestate, was held by Marsh, Merwin and Lemmon. At maturity L. M. Hopkins paid it and took it up, and presented it to the commissioners who allowed its face value, but without interest. On the 1st of October, 1895, the plaintiff, as administrator, paid to L. M. Hopkins upon said note $137.96, leaving the balance due thereon unpaid. The interest upon this note from maturity to October 1st, 1895, amounts to $12.67 and this sum L. M. Hopkins is demanding from the plaintiff.

The plaintiff claimed that these two amounts for interest, which L. M. Hopkins was thus demanding from him, should, by the trial court, be added to the amount of the claims allowed by the commissioners, in making up the amount for which judgment should be rendered. The court overruled this claim, and took as the basis of its judgment as to this matter the claims allowed by the commissioners, with interest thereon from the date of the filing of their report.

We think the ruling complained of was correct. This is not a suit brought to determine whether L. M. Hopkins has or has not a valid claim against the estate of the intestate. The pleadings are not adapted for the trial of any such issue, and L. M. Hopkins is not a party, and would not be bound by any action of the court with respect to his claims. If he has proved his claim before the commissioners and has taken

no appeal, their decision, for the purposes of this case, determines what his claim is. If he has a claim which he has not proved before the commissioners, then he must establish it, if he can, in some proceeding other than this.

There is no error apparent on the record.

In this opinion the other judges concurred.