SAMUEL DEMING AND OTHERS vs. AUSTIN F. WILLIAMS AND OTHERS.

In equity an absolute conveyance of personal property from a husband directly to his wife is sufficient, so far as form is concerned, to divest the husband of such property, and to vest the same in the wife.

And the wife takes a sole and separate estate, in as full a manner as a third person would do.

And though a conveyance from a stranger to a *feme-covert*, in order to vest in her a sole and separate estate, must contain words indicating such an intention, such words are unnecessary in a transfer from a husband to his wife.

A gift of personal property made in good faith by a husband to his wife, will be sustained in equity, where there are no creditors to be injured.

A woman at the time of her marriage, owned thirty-six shares of bank stock standing in her name. Some time after the marriage her husband transferred

it to himself for the purpose of pledging it to the bank for a loan, and after the loan was repaid, retransferred it to her, stating that it was hers and that he wished it to stand in her name as before. The husband afterward purchased fourteen other shares of the stock of the same bank and had them transferred to his wife. The transfers were made in good faith and there were no creditors to be injured. Held, that in equity the husband had made a valid gift of the whole fifty shares to the wife, and that she took a. sole and separate estate therein.

The case of *Dibble* v. *Hutton*, 1 Day, 221, overruled; and the case of *Griswold* v. *Penniman*, 2 Conn., 564, considered and approved.

PETITION in equity.

In 1811, Fanny Deming, a *feme sole,* then being the owner of thirty-six shares of the stock of the Hartford bank, married Richard Cowles. The bank stock stood in her maiden name from the time of her marriage until the year 1837, when the said Richard, having obtained a temporary loan at the bank, to secure the payment of the same transferred the stock into his own name on the books of the bank, and pledged it to the bank as security for the payment of the loan. The loan being soon after paid, the said Richard in 1838 retransferred the stock to his wife, the said Fanny, by her married name, stating that it was her stock and he wished to place it in her name as it was before. Afterward, at two different times, he purchased fourteen shares of stock of the same bank and caused them to be transferred to the said Fanny, making fifty shares of stock standing on the books of the bank in her name, all which so remained until after the death of both of them and till the present time. In 1845 Richard Cowles died, leaving a will in which no mention of this bank stock is made. He also left a large estate, and more than enough to pay all his debts, exclusive of the bank stock. Fanny Cowles died in 1854, also leaving a will in which she bequeathed to some of the petitioners the bank stock in question.

The bill asked the advice of the court in behalf of the executor of the said Fanny, who was one of the petitioners, and that the Hartford bank be required to allow a transfer of the stock to be made by the executor to the legatees of the said Fanny, and that the executor and legatees of the said Richard

Cowles be enjoined from making any further claim to the stock.

The questions arising in the case, upon the foregoing facts, were reserved for the advice of this court.

*Hungerford*, for the petitioners.

It was the intention of Richard Cowles and the understanding of both him and Mrs. Fanny Cowles, that the whole fifty shares of stock should be the sole and separate property of Mrs. Cowles. The transfers made were sufficient in form for this purpose, and equity will give effect to the intention. *Neufville* v. *Thompson*, 3 Edw. Ch., 92. *Latourette* v. *Williams*, 1 Barb., 9. *McKennan* v. *Phillips*, 6 Whart., 571. *Kee* v. *Vasser*, 2 Ired. Ch., 553. *Stanwood* v. *Stanwood*, 17 Mass., 57. *Phelps* v. *Phelps*, 20 Pick., 556. *Adams* v. *Bracket*, 5 Met., 280. *Slanning* v. *Style*, 3 P. Wms., 334. *Lucas* v. *Lucas*, 1 Atk., 270. *Freemantle* v. *Bankes*, 5 Ves., 79. *Battersbee* v. *Farrington*, 1 Swanst., 106. 2 Story Eq., § 1204.

*Baldwin* and *Parsons*, for the respondents.

1. The bank stock was the property of Richard Cowles. 1st. It was personal property, and by the common law and the law of this state personal property of the wife on her marriage becomes the property of her husband. *Dibble* v. *Hutton*, 1 Day, 221. *Morgan* v. *Thames Bank*, 14 Conn., 99. 4th *Eccl. Soc. Middletown* v. *Mather*, 15 id., 587. *Winton* v. *Barnum*, 19 id., 171. *Edwards* v. *Sheriden*, 24 id., 165. 2d. If it was not personal property but a chose in action, Richard Cowles reduced it into possession by the transfer to himself in 1837, and the retransfer in 1838 did not vest the property in the wife to her sole and separate use, there being no such intention in the husband, and no words in the transfer indicating it. *Mews* v. *Mews*, 21 Eng. L. & Eq., 556.

2. The husband can not convey personal property to his wife by gift so as to divest himself of the absolute ownership and control of it. *Dibble* v. *Hutton*, Supra. 4 *Eccl. Soc.* v. *Mather*, Supra. *Winton* v. *Barnum*, Supra. *West* v. *How-*

*ard*, 20 Conn., 587. Such conveyances have been sustained in equity in the following cases only ; 1st. Where there is an ante nuptial agreement. *Baldwin* v. *Carter*, 17 Conn., 201. *Brown* v. *Slater*, 19 id., 192. *West* v. *Howard*, Supra. *Riley* v. *Riley*, 25 Conn., 154. 2d. Where there is a *bona fide* and valuable consideration. *Livingston* v. *Livingston*, 2 Johns. Ch., 537. 3d. Where there is a strong and meritorious consideration, and especially if connected with an antenuptial agreement. *Shepard* v. *Shepard*, 7 Johns. Ch., 57. *Jones* v. *Obenchain*, 10 Gratt., 259. 4th. In England, where the gift is a reasonable provision for the wife which equity would compel a husband to make. 2 Story Eq. Juris., § 1375–82. This case does not fall within any of the above classes.

ELLSWORTH, J. The question to be decided is, whether the fifty shares of stock of the Hartford bank standing in the name of Fanny Cowles, were, at the time of her death, her estate, or a part of the estate of her deceased husband Richard Cowles. The claimants on the one side are legatees of said Fanny, and on the other of said Richard.

When Fanny Cowles married Richard Cowles in 1811, thirty-six of the shares stood in her name, by distribution from her father's estate. In 1837, Mr. Cowles wishing to make use of those shares as a security for a loan at the bank, transferred them into his own name, and thence to the bank, and after the loan was repaid, caused them to be retransferred into the name of his wife, where they have remained ever since. During the continuance of the marriage, he likewise purchased fourteen other shares (five shares at one time and nine at another,) probably with the dividends from the thirty-six shares, and had them directly transferred by the person of whom he purchased, into the name of his wife.

Without stopping to enquire whether bank stock standing in the name of the wife and owned by her at the time of the marriage, is property in possession, and like other personal property in possession passes at once to the husband at the common law, we proceed to examine the question who owned this stock at the death of Mrs. Cowles.

The case presents two questions : first, did Mr. Cowles, by what was done, give this property to his wife to be exclusively her own ? and if so, in the next place, will the law or equity allow this to be done, especially in this state ? We think both questions must be answered in the affirmative.

First then, did Mr. Cowles give this property to his wife to be exclusively her own ? The transfer of the 36 shares was made directly to her, on the books of the bank, in the form prescribed by the by-laws. This is sufficient in equity, (if there be nothing more,) to vest the interest in her. Whether marriage is an impediment falls under the second enquiry. As to the fourteen shares purchased by Mr. Cowles, he never took a title to them himself, but had them at once transferred by the vendor into the name of his wife. Now, had such transfers been made by a parent into the name of a child, the child would acquire the interest as an advancement, such intent being inferred by law from the relationship of the parties. The same is true in case of the wife, where the husband purchases land and has the deed made directly to her, there being in the case no creditors and no fraud upon any other party. The law attaches to absolute deeds and transfers a full alienation of the entire interest or property, so far as the alienation is permitted by the principles of law or equity. Such are all the gifts or deeds by husbands to wives of real or personal estate found in the books, from the case of *Slanning* v. *Style*, (decided in 1734 and found in 3 P. Wms., 334,) to the present time, and they are exceedingly numerous. They sustain the principle, that so far as the form and substance of the gift or alienation are important, that which would be good if made to a third person, is good in a court of equity if made by the husband to his wife. We will cite a few of the cases. *Slanning* v. *Style*, 3 P. Wms., 334. *Lucas* v. *Lucas*, 1 Atk., 270. *Freemantle* v. *Bankes*, 5 Ves., 79. *Battersbee* v. *Farrington*, 1 Swanst., 106. *Latourette* v. *Williams*, 1 Barb., 9. *Neufville* v. *Thompson*, 3 Edw. Ch., 92. *McKennan* v. *Phillips*, 6 Whart., 571. *Kee* v. *Vasser*, 2 Ired. Ch., 553. *Stanwood* v. *Stanwood*, 17 Mass., 57. *Phelps* v. *Phelps*, 20 Pick., 556. *Adams* v. *Brackett*, 5

Deming *v.* Williams.

Met., 280. 2 Story Eq., § 1204. *Jones* v. *Obenchain*, 10 Gratt., 259.

The reason why we have dwelt so long upon a point which appears too clear to admit of a doubt, is because it was strenuously contended on the argument, that a deed or gift by the husband to his wife was not of course to her exclusive use, but to his use, like other property given her, and that he could by force of his marital rights resume it; and the case of *Mews* v. *Mews*, (21 E. L. & Eq., 556,) was particularly pressed upon our attention in support of the position. If by this nothing more is intended than that the transfer by the husband to his wife must be a complete transfer of the property to her, irrevocable in its character, we assent to the proposition ; but if it is meant, that such a transfer must be accompanied with the word "irrevocably," or words of equivalent import, we can not give it our assent. No such case can any where be found.

The case of *Mews* v. *Mews*, as we understand it, decides nothing more than that there must be a complete and full transfer, such as would be complete and effectual in the case of other persons to vest the entire legal and equitable interest exclusively in the grantee or donee. The case of *Neufville* v. *Thompson*, 3 Edw. Ch., 92, means no more than this. Undoubtedly the cases all of them import that the wife is to take to the exclusion of the husband, but this is to be inferred from the fact that it is a *bona fide* gift of the husband to his wife ; if this is not irrevocably to her separate use, the transaction has no meaning, for no one pretends that a legal title passes to her. We can not believe that the husband, in order to be irrevocably bound, must use language to that effect, or covenant that he will not resume or sell the thing he has given to his wife. When a stranger gives to the wife, it is true that words of exclusiveness are necessary, for otherwise the unity of husband and wife would carry to the husband alone a gift of personal property made to the wife. But when the husband himself gives to his wife this can not be necessary, and we are confident no case can be found which upholds such a doctrine.

The next question is, will a court of equity sustain an executed grant or gift by the husband to his wife, where there are no creditors to be injured? For it is conceded that it can not be done at all at law, and that it will not be sustained in equity where done to the prejudice of creditors.

Were it not for the case of *Dibble* v. *Hutton*, 1 Day, 221, this question would be too clear for an argument. There is an unbroken current of decisions, and of the highest judicial authority, sustaining such gifts, both in England and this country. In several of the states the principle has been directly affirmed, and we are not aware that it is any where denied or called in question beyond the limits of our own state.

We do not think it necessary to go extensively into the discussion of this doctrine, because it is fully considered in the cases referred to, and was examined carefully by this court in the late case of *Riley* v. *Riley*, 25 Conn., 154. We then intimated what we thought the law might be held to be, and on full argument we are now satisfied that the doctrine which prevails elsewhere should be adopted here, nothwithstanding the ancient *use* of *Dibble* v. *Hutton*. We are aware that that case was decided by a court embracing men of high judicial character and ability, and that it has for years been treated by members of the profession and by judges on the circuit certainly, as the law of the state, but it has at no time received favor from courts or jurists elsewhere, nor has it been always approved in all its details and without qualification by our own courts. It has on the contrary often been spoken of with regret, as an anomaly in the law, irreconcilable with principles of acknowledged equity and justice. So far then as that case decides that the husband can not under any circumstances make a valid and perfect gift to his wife, we think it ought not longer to be held to be the law of the state. Little if any incidental injury will be likely to arise from the repudiation of that doctrine and the establishment of the new and more equitable one which we now adopt. The statutes of repose will cover many cases and in others the injury will not be very great ; and it is better that that injury

be submitted to, than to have the doctrine left as it has been understood to be, working manifest injustice to individuals not conversant with the niceties of law, and to the community generally.    Nor are we certain that the chief doctrine of the case of *Dibble* v. *Hutton* has been reiterated and sanctioned in this court so often as has been claimed by the counsel for the defendants.    Let us look at the cases cited. *Morgan* v. *Thames Bank*, 14 Conn., 99, does not contain a reference to the case of *Dibble* v. *Hutton*, and only decides that personal property accruing to the wife during coverture, whether in action or possession, passes to the husband at law and in equity, if there be no words confining the use to the wife ; a principle settled in *Griswold* v. *Penniman*, 2 Conn., 564, which rests on another ground which we will presently notice.    *The Fourth Eccl. Society in Middletown* v. *Mather*, 15 Conn., 587, turned, we think, on the same point as *Morgan* v. *Thames Bank ;* it was the case of a note given by a third person to the wife during coverture.    How far the court meant to go, if at all, beyond that very point in the case we can not say ; that point was entirely decisive, and the court cite *Griswold* v. *Penniman* and that class of cases in support of the decision.    It is at least certain that the counsel in arguing that case did not in the slightest degree refer to or claim benefit from *Dibble* v. *Hutton*, but rather from *Griswold* v. *Penniman*, and that class of cases.    Judge Church, in giving the reasons, puts the judgment of the court distinctly on the ground that the note was given to the wife by her brother during coverture, and in a subsequent paragraph, in speaking of an hypothetical case, he alludes to *Dibble* v. *Hutton* with seeming approbation.    There is no evidence that the court intended to go beyond *Griswold* v. *Penniman*. The next case is *Winton* v. *Barnum*, 19 Conn., 171.    This decision is a reiteration of those of *Griswold* v. *Penniman*, and *Fourth Eccl. So. of Middletown* v. *Mather*, and the case of *Dibble* v. *Hutton* is not once alluded to in the opinion of the court.    *Edwards* v. *Sheriden*, 24 Conn., 165, is of the same character.    These are all the cases cited from our reports ; and they are in our view a feeble auxiliary to the

chief doctrine of the case so much appealed to. The court throughout has seemed averse to a positive confirmation of the case of *Dibble* v. *Hutton*, in its entire doctrine. We do not doubt that that case has been followed, though sometimes reluctantly, by judges on the circuit, and assumed to be the law of our state by eminent counsel in advising their clients, but nevertheless we think that, so far as it denies the power of the husband to give property to his wife, it is not good law and ought not longer to be upheld.

But it is said that if this court has not distinctly reaffirmed the case of *Dibble* v. *Hutton*, the doctrine of the case is necessarily assumed to be good law in *Griswold* v. *Penniman* and the kindred cases which have followed that case, for it is said the principle that personal property accruing to the wife during coverture at once vests in the husband, springs from the theory of the common law that the husband and wife are one, and that hence the husband can not make a gift to his wife. For most purposes this principle of oneness or legal unity is recognized in courts of law, but there are numerous and important exceptions in equity, and the power of the husband to give property to his wife is one of these exceptions universally recognized in the books. The principle of the common law is fully maintained in *Griswold* v. *Penniman*, on grounds quite sufficient in our judgment, and which must continue to uphold that class of cases, if we regard the symmetry of the law of *baron* and *feme.*

All agree that whatever personal property accrues to a married woman, whether in possession or in action, at law vests absolutely in the husband. He may sue alone on his legal title, which proves that the title is in him and him only. But this is not true of the wife's choses which accrued before coverture; the legal title to them is not vested in the husband but in the wife, and he has only a right to make them his own by suit or other mode of collection. Therein is the difference. In one case he gets a title by operation of law, and in the other he gets none, but only a mere right to unite with his wife in collecting the money. Why should equity be invoked to divest the husband of a legal title which the

law has created in his behalf and for his benefit? We do not readily see a reason for it, and must regard the doctrine of *Griswold* v. *Penniman* as sound and consistent, based on the common law itself and the earlier decisions of the English courts, and that to depart from it would create rather than remove an anomaly in the law. We think a proper discrimination has not been made between the case of *Dibble* v. *Hutton,* and that of *Griswold* v. *Penniman.* In the former a court of equity could and should have carried out the intention of the parties, in the latter the law was left to take its course according to its own wisdom and policy, there having been no intention of the parties to adopt a different rule. These cases have, it is true, something in common, but not to such an extent that the latter can be said to sustain the main doctrine of the former.

Besides, the doctrine of *Griswold* v. *Penniman* has been so often affirmed and reaffirmed by this court, that we must not be understood as willing to impair its force by the present decision. Nor can it be important to question it, since the passage of the recent statutes for the protection of the rights of married women. The following are the cases in this court re-affirming the doctrine of *Griswold* v. *Penniman.* *Fitch* v. *Ayer,* 2 Conn., 143 ; *Cornwall* v. *Hoyt,* 7 id., 420 ; *Whittlesey* v. *McMahon,* 10 id., 137 ; *Morgan* v. *Thames Bank,* 14 id., 99 ; *Eccl. Soc. Middletown* v. *Mather,* 15 id., 587 ; *Winton* v. *Barnum,* 19 id., 171 ; *Hawley* v. *Burgess,* 22 id., 284 ; *Edwards* v. *Sheriden,* 24 id., 165.

We advise judgment to be rendered for the petitioners.

In this opinion the other judges concurred.

Judgment advised for the petitioners.