## RACHEL SIPLEY

### *v.*

## SELAH R. WASS et al.

1. A deed of conveyance from husband directly to wife, and having a nomi-
nal consideration, held to pass an equitable estate in fee, the holder of which is
·entitled to have the legal title from the heirs of the husband.

2. A common law judgment against the wife creates no lien upon her equi-
table estate under such a conveyance.

3. A mortgage duly executed by a married woman, separate and apart from
her husband, but in which he does not join, creates no lien, either in law or in
·equity, upon the land comprised in it.

4. A mortgage, for value, executed by both the fraudulent grantor and fraudu-
lent grantee, is good as against the creditor without judgment, intended to be
·defrauded, though the mortgagee had notice that the conveyance was made for
the purpose of defrauding that particular creditor, provided the purpose of the
mortgage is not to defraud creditors.

5. An absolute payment and discharge, in whole or in part, of a debt is suffi-
·cient to make the creditor a *bona fide* purchaser for a valuable consideration,
under the twenty-second section of the act concerning mortgages.

6. Complainant ·recovered a common law judgment against one of the de-
fendants, who, at the commencement of the action, was seized of an equitable
·estate in certain lands; pending suit she conveyed them to her daughter. After
judgment complainant brought suit in equity against mother and daughter to
have the conveyance set aside and the equitable estate subjected to the lien of
her judgment, which suit resulted in a decree in complainant's favor and an
·execution out of chancery for the sale of the lands to pay the complainant's
judgment, under which the premises were purchased by' complainant for a price
which was credited on her judgment; after judgment, but before bill filed, the
mother and daughter joined in a mortgage to secure a debt due by one or both
to a third party, who, however, failed to have his mortgage recorded until after
the decree in equity had been made.—*Held,* that the mortgage was void as
·against complainant's title under her decree and sale.

---

On final hearing on pleadings and proofs.

*Mr. John H. Dahlke,* for the complainant.

*Mr. Carl Lentz,* for the defendants, Selah R. Wass et al., in the same interest.

*Mr. William H. Morrow, pro se.*

PITNEY, V. C.

The complainant claims to be the owner in equity of a farm in Warren county, the legal title to which is vested in the defendants, Selah R. Wass and her sisters, Nancy Deremen and Emma Henry, and one object of the bill is to establish the trust and to procure a conveyance from the holders of the legal title.

The complainant claims to have obtained, by legal proceedings duly set forth, this equitable title from one Elizabeth V. Wass, the mother of the defendants just named, and she sets out a mortgage executed by Elizabeth V. Wass and her daughter Selah R. Wass to the defendant W. H. M., and prays that her title may be decreed to be paramount to and free from said mortgage.

All the defendants, except Elizabeth V. Wass, have answered, and the mortgagee, W. H. M., has incorporated in his answer a cross-bill against the complainant and his co-defendants, setting up his mortgage in the usual form and praying foreclosure.

The facts are these : George W. Wass, the father of Selah R. Wass and of Mrs. Deremen and Mrs. Henry, prior to 1854, was the owner of the land in question, holding it by virtue of a conveyance made to him by George W. Vaughn, dated April 22d, 1847. On the 12th of October, 1854, he endorsed upon the original conveyance from Vaughn and executed a deed to his wife, Elizabeth V. Wass, in these words :

"Know all men by these presents that I, George W. Wass of the township of Blairstown in the County of Warren and State of New Jersey for and in consideration of the sum of one dollar to me in hand paid by my wife Elizabeth at and before the sealing and delivery hereof the receipt whereof is hereby acknowledged and for other good causes and considerations me thereunto moving have granted bargained and sold and by these presents do grant, bargain and sell unto the said Elizabeth Wass her heirs and assigns forever all those two certain tracts lots or parcels of lands and premises particularly mentioned and described in the within deed from George W. Vaughn to me the said George

W. Wass together with the rights, members and appurtenances thereunto belonging and all my right title and interest therein to have and to hold all and singular the premises hereby granted or mentioned or intended so to be unto the said Elizabeth Wass to her sole and separate use and to her heirs and assigns forever. In witness whereof I have hereunto set my hand and seal this twelfth day of October in the year of our Lord one thousand eight hundred and fifty-four.

"GEORGE W. WASS. [SEAL.]"

This deed was duly acknowledged on the same day and recorded on the 2d of April, 1857, in the proper records of the county of Warren.

On the 29th of March, 1867, Elizabeth V. Wass executed a bond in the penal sum of $2,800 to Catharine Vaughn, conditioned for the payment of the sum of $1,400 on the 1st day of April, 1871, with interest at seven per cent., and to secure the payment of that bond she executed a mortgage upon the premises here in question, together with another tract of about forty-four acres, situate in Warren county, which other tract was that day conveyed to her by Isaac Wildrick by deed of that date. This mortgage was executed by her without her husband joining, and was duly acknowledged separate and apart from her husband and duly recorded. George W. Wass was at that time living, and died in the year 1878 intestate, leaving surviving the defendants, Elizabeth V. Wass, his widow, Mrs. Deremen, Mrs. Henry and Selah R. Wass, his heirs at law.

Catharine Vaughn, the obligee and mortgagee of the bond and mortgage above stated, died in 1877, and administration of her estate was duly granted to the complainant.

In 1884 the complainant, as administratrix of said Catharine Vaughn, commenced a suit in the circuit court of the county of Warren against Elizabeth V. Wass to recover the amount due on the said bond, and such proceedings were had in that suit; that afterwards, on the 4th of January, 1888, judgment final was entered in favor of the complainant and against the defendant therein for the sum of $3,165.81 of debt and damages, and $119.80 of costs; in all $3,285.61.

On the 22d of July, 1886, and while the action on the bond was pending, Mrs. Wass, by deed of that date, conveyed the

30

premises here in question, together with the tract conveyed to her
by Wildrick, to her daughter, the defendant Selah R. Wass, and
on the 12th of February, 1888, more than a month after the
entry of the judgment against her, Mrs. Elizabeth V. Wass,
together with her daughter, the defendant Selah R. Wass,
executed a mortgage to W. H. M. to secure the payment of $300,
which, however, was not recorded until the 22d of February,
1889. In the meantime, and on the 16th of February, 1888,
four days after the execution of the mortgage last mentioned,
the complainant herein, in her capacity of administratrix, filed
her bill in this court against Elizabeth V. Wass and Selah R.
Wass, founded on the judgment in the Warren circuit, praying
that the conveyance from Elizabeth to Selah, made in 1886,
might be declared to be fraudulent and void as against her judg-
ment and might be set aside. A *lis pendens* was filed on the
17th of February, 1888, the next day after the filing of the bill
in the Warren county clerk's office, setting forth in due form the
object of the bill. Such proceedings were had on this bill in
equity that, on the 19th of February, 1889, a decree was made
to the effect that the conveyance, made by Elizabeth V. Wass to
her daughter Selah R. Wass, was void as against the complain-
ant, and that the judgment of the complainant, and the debt
upon which it was founded, was a lien superior to the said con-
veyance upon the tract of land and premises conveyed to Eliza-
beth V. Wass by Isaac Wildrick, and that the same be sold to
pay the amount due her upon her judgment; and further, that
the right, title and interest of the defendant, Elizabeth V. Wass,
in the tract secondly described in her said bill (being the
premises in dispute in this suit), is an equitable asset for the
payment of so much of the aforesaid debt, interest and costs as
might remain after deducting the first tract, and that for the pay-
ment of the balance the said complainant had a lien from the
time of filing the said bill upon the right, title and interest of
the said defendant, Elizabeth V. Wass, therein prior to and at
the time, and superior to the said conveyance of the said Eliza-
beth V. Wass to Selah R. Wass, and that this right, title and
interest be sold to satisfy the balance, if any remained, of the said

·debt, interest and costs after making sale of the said first tract. And it was further ordered, adjudged and decreed that the sale of the interest of the defendant, Elizabeth V. Wass, in the tract of land in question in this suit, should not affect any legal right ·or interest which Selah R. Wass might have in the lands as one of the heirs at law of her father, George W. Wass, deceased.

An execution was duly issued out of this court, founded on that decree, with the result that the premises were duly brought to a sale, at which the Wildrick lot produced $1,027.90, and the interest of Elizabeth V. Wass in the tract here in question pro- ·duced $115, leaving upwards of $2,500 still due complainant upon her judgment. Both tracts were purchased by Selah ·Sipley, who acted therein as agent for the complainant, and who ·afterwards conveyed the same to the complainant.

The first question is as to the effect of the deed of 1854 from the husband direct to the wife. It is in form quite sufficient to convey the legal title if it had been made to a third party. It is, however, familiar law, and was admitted at the hearing, that it was inefficient to convey the legal title to the wife in this case, ·and it is upon that ground that the complainant comes into this ·court. But, though void at law, it is equally well settled that it ·is good in equity.

Speaking of a chattel mortgage given by the husband direct to the wife, but unaccompanied by delivery of possession of the ·chattels, Chief-Justice Beasley, in *Woodruff* v. *Clark, 13 Vr. 199,* ·says : " That this transfer was enforceable in equity, and that the title of the plaintiff would have been protected in that forum against the claims of the husband's creditors, no one will deny, the only question being, whether such transfer can be recognized ·and effectuated by a court of law."

The direct question was presented and decided by Vice-Chan- cellor Bird in the unreported case of *Vought* v. *Vought* (Septem- ·ber, 1884). The authority cited by him is *Moore* v. *Page, 111 U. S. 118,* where a number of authorities are collected, notably *Jones* v. *Clifton, 101 U. S. 225 ; Shepard* v. *Shepard, 7 Johns. Ch. 57 ; Hunt* v. *Johnson, 44 N. Y. 27 ; Deming* v. *Williams, 26 Conn. 226.*

Sipley *v.* Wass.

In the case in hand, no question of creditors of the husband is involved. The proofs show that the wife has always been, and still is, in possession of the premises, and though only a nominal consideration is mentioned in the deed, that is sufficient where the relation between the parties is that of husband and wife. *Story Eq. Jur.* §§ *166, 170 ; 2 Pom. Eq. Jur.* § *588.*

The complainant having acquired a right by her proceedings in this court, before mentioned, to stand in the place of Elizabeth. V. Wass, is entitled to a decree that the defendants, Selah R. Wass, Mrs. Deremen and Mrs. Henry, convey to her the legal title to the premises here in question, and that they pay the costs of her suit.

With regard to the mortgage of $300 given to W. H. M., it will be observed that it was dated and acknowledged after the judgment was recovered by the complainant, but before the filing of her first bill, but was not recorded until after decree passed in her favor, and that her decree declared her lien to commence at the time of the filing of her bill. As Mrs. Wass's title in the premises was purely equitable, complainant acquired no lien upon them by virtue of her judgment at law. She could only acquire such lien by proceedings in this court. She is not helped by the mortgage executed by Mrs. Wass in 1867, which was given to secure the bond. The complainant nowhere in any of her proceedings, nor in her present bill, has based any equity upon the existence of that mortgage. It was indeed acknowledged by Mrs. Wass before a proper officer, separate and apart from her husband, and in that respect is precisely like the mortgage given by the married woman, Mrs. Vernam, without her husband, passed upon in *Armstrong* v. *Ross, 5 C. E. Gr. 111.* Of that mortgage, Chancellor Zabriskie (at *p. 121*), says : "Upon the principles laid down, it must be held that the mortgage given to Thomas Newton, now held by the defendant William Ross, is void. It was executed by Mrs. Vernam alone, without her husband. And as it is no lien on the lands, it cannot be made so in this suit, even if it had been shown that the debt had been contracted for the benefit of Mrs. Vernam's separate estate,

Sipley v. Wass.

·or for her own benefit." That I understand to be the rule in this court.

At the time the mortgage to W. H. M. was given, Mrs. Wass was a widow with capacity to mortgage the premises. If we lay ·out of view the conveyance to her daughter, she held in them an ·equitable estate in fee, and that estate she conveyed by a mortgage to W. H. M. before the complainant's lien had attached to it. The mortgage, being executed by both mother and daughter before complainant had acquired her lien, must be given its ·natural preference, unless it is impeachable for fraud or want of ·consideration, or has lost its place by its holder failing to record it until after the complainant's lien had attached.

The fact that the mortgagee was counsel for the mother in her ·defence of the action at law prosecuted against her by the complainant upon the Vaughn bond, in which she recovered judgment for so large an amount; that he must have known that the mother ·conveyed to the daughter pending that suit; and that he took the precaution to have his mortgage executed by both mother and daughter, may possibly be sufficient, as claimed by complainant, ·to charge him with notice of the fraudulent character of that con·veyance and that it would probably be attacked on that score by ·the complainant. I express no opinion on that point. But such ·notice does not, of itself, invalidate any mortgage which he might ·take from both the fraudulent grantor and grantee before an ·actual lien obtained by the judgment creditor. At any time before complainant's remedial proceeding had reached the point of ·giving her a lien, he had a right to deal with the depositaries of the title as the actual owners, so long as he was not consciously a party to any transaction tending to hinder or delay creditors. If his mortgage had been executed by Selah R. Wass alone, then, in order to maintain himself upon it, he must have shown that he advanced money or other thing of value upon the strength of her apparent title, and that he was free from knowledge of its fraudulent character. *Mingus* v. *Condit, 8 C. E. Gr. 313.* See remarks upon this case in *Milton* v. *Boyd, 22 Atl. Rep. 1078* (at *p. 1088*), where it is shown that the doctrine of that case was not ·overruled by *Bank* v. *Cummings, 12 Stew. Eq. 577.* *Bank* v.

*Cummings* holds that if the mortgage by the fraudulent grantee is made at the request, and to secure the debt, of the fraudulent grantor, it is valid as against the creditor who assails the fraudulent conveyance, and so far overruled the result in *Mingus* v. *Condit.* This is upon the ground that debtors have the right to prefer creditors, and the giving of the mortgage by the fraudulent grantee at the request of the fraudulent grantor is doing nothing more than what the law would compel the parties to do. This privilege of the fraudulent grantor to prefer his creditors when in a failing condition is confirmed by the recent case of *Muchmore* v. *Budd, 24 Vr. 369.*

Laying out of view for the present the failure of the mortgagee to record his mortgage, I think it must stand as a valid lien prior to the complainant's decree, unless it appears that it was given without consideration or for a fraudulent purpose. Under the particular circumstances of the case, I think the burden of showing that is on the complainant. No proof was offered on the subject.

Complainant does not make any allegation of fraud in her bill, but relies wholly upon the charge that the mortgagee had notice of her judgment and of the fraudulent character of the transfer from the mother to the daughter. The mortgagee, in his answer, says that the mortgage was given to him to secure an indebtedness on the part of the two mortgagors to him for professional services, and in that part of the answer which is a cross-bill distinctly alleges that it was given to him for a full and valuable consideration. The complainant, in her replication in answer to this cross-bill, simply declines, for want of knowledge, to admit this allegation, and leaves the mortgagee to make such proof thereof as he may be advised. There is throughout the complainant's pleadings no allegation or hint of fraud or want of good faith in the mortgagee. No proof was offered by the mortgagee of the consideration of his mortgage, and I do not think that in the state of the pleadings and under the circumstances of the case, and for present purposes, any proof of it was necessary. The production of the bond and mortgage duly executed was sufficient, and must be held to be good as against the complain-

ant, unless it has lost its precedence by failure to be recorded. This aspect of the affair remains to be considered.

The statute (*Rev. p. 706 § 22*) declares unrecorded mortgages to be void against a subsequent judgment creditor or *bona fide* purchaser or mortgagee for a valuable consideration, not having notice thereof.

Is the complainant either a subsequent judgment creditor or a *bona fide* purchaser without notice? There is no allegation in the cross-bill, nor any proof in the cause, that complainant had the least notice, other than that which the record gave her, of this mortgage. She purchased under a decree which gave her a specific lien and directed a sale of the mortgaged premises to pay her debt. In purchasing under that decree she was not bound to look for encumbrances or conveyances affecting the property later than the decree, and the record of such is not notice to her. Her position seems to me to be the same as though her security had been a mortgage from both mother and daughter, executed and recorded prior to the record of that in question, and without notice of it, and she had purchased under foreclosure of her own mortgage without making the other mortgagee a party to the proceedings.

It is well settled that, in order to give a party the position of a *bona fide* purchaser or mortgagee under the statute in question, he must have parted with something of value on the strength of the apparent title in his grantor or mortgagor. Here all that the complainant has lost or parted with is a credit of $115 on her judgment, being the amount that she bid for the land in question at the sale under her decree. To that extent her judgment is paid and satisfied, and can never be enforced against the judgment debtor. The case discloses no ground upon which she can avoid that result.

The rule is that a person taking a mortgage or conveyance as security merely for the payment of a pre-existing debt, is not a *bona fide* purchaser or mortgagee, because the debt still remains and the creditor has lost no right which he had to prosecute and recover it. But when the debt is actually paid and discharged by the purchase of the premises, the rule, as I understand it, is

otherwise, and such payment and discharge furnish a sufficient consideration to make the grantee or mortgagee a *bona fide* purchaser or mortgagee. *2 Pom. Eq. Jur.* § *749, and cases cited in note 2 ; American notes to Basset* v. *Nosworthy, 2 Lead. Cas. Eq. (4th Am. ed.) p. 85* (1887), where the learned editor says : " Where time is given for the payment of a pre-existing debt in consideration of the transfer of real or personal property, and *a fortiori* where such property is received in satisfaction, the transaction will enure as a purchase for value," citing cases.

In *Nugent* v. *Gifford, 1 Atk. 463,* an executor had assigned a bond and mortgage made in trust for his testator, and held by him as an asset of the estate, to the executor's creditor, in payment and discharge of a debt of the executor, and Lord Hardwicke held the assignee to be a purchaser for value, and entitled to hold the asset as against the creditors of the testator, saying (at *p. 469*) : " The third objection is that this is a *devastavit,* because the consideration was a debt of the executor's own. But I know no rule in this court to warrant *that,* neither is there any difference between this and money paid down, provided it be done *bona fide ;* a sum of money *bona fide* due is as good and valuable a consideration as any."

To the same effect is *Mead* v. *Lord Orrery, 3 Atk. 235.* In both cases he also held that the fact that the executor was applying the assets to the payment of his own debt was not sufficient notice of a *devastavit* to charge the party with complicity therein. That part of the judgment has been overruled by later cases. *Field* v. *Schiefelin, 7 Johns. Ch. 150* (at *p. 155*). But so much of the judgment as holds that the actual payment of a debt and surrender of its security was a valuable consideration, has not been disturbed.

In *Padget* v. *Laurance, 10 Paige 170* (at *p. 180*), Chancellor Walworth expressed the opinion that the discharge and satisfaction of his judgment by the purchase of property under it, was a sufficient consideration to constitute the judgment creditor a *bona fide* purchaser of that property.

An examination of the few cases in which the contrary doctrine has apparently been announced will show that, in point of fact,

the conveyance was taken as security merely, and not in absolute payment.    Such was the case in *Pancoast* v. *Duval, 11 C. E. Gr. 445*.

In *De Witt* v. *Van Sickle, 2 Stew. Eq. 209* (at *p. 214*), Vice-Chancellor Van Fleet says :    " Whether the avails of the fraud are held by the vendees of the fraudulent grantee or the fraudulent grantor is a matter of no significance whatever.    Creditors have a right to have them sequestered for their benefit, no matter who holds them, unless their right is encountered by a right founded in a superior equity.    Paying for them by the mere surrender of a debt due by one of the fraud-doers does not give such right. *To divest the right of a purchaser who pays in this mode, merely puts him back where he was before his purchase. His claim remains intact against his debtor. He is not harmed, but simply remitted to his original position.*" He then proceeds to say that the doctrine of *Owen* v. *Arvis, 2 Dutch. 22*, as expounded in *Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530* (at *pp. 539, 540*), would seem to go further and deny the right of the purchaser " even if he is put in a position less fortunate than that he occupied originally."

These cases were decided upon considerations arising partly out of the statute respecting fraudulent conveyances and partly out of our statute respecting assignments for the benefit of creditors, which have no application here, but I cannot help thinking that both are much shaken, if not directly overruled, by the combined effect of *Bank* v. *Cummings, 12 Stew. Eq. 577*, and *Muchmore* v. *Budd, 24 Vr. 369*, both decided by the court of errors and appeals.

By what was said on this topic in *Mellick* v. *Mellick, 2 Dick. Ch. Rep. 86* (at *p. 98*), it was not intended to assert that an actual payment and satisfaction of a pre-existing debt would not constitute a valuable consideration, but the language used, unfortunately, was so lacking in clearness in this respect as to lead the court of errors and appeals, in reviewing that case, to understand it as so asserting, and that court, in affirming the decree, expressly avoided affirming such doctrine.

In view of this condition of the authorities, it seems clear enough, that the payment *pro tanto* of complainant's judgment was sufficient to give her the standing of a *bona fide* purchaser for value,, and bring her within the terms of the twenty-second section of the act concerning mortgages.

This renders it unnecessary to consider whether or not her decree· did not constitute her a "judgment creditor" within the meaning. of those words as used in the act just referred to. Certainly it brought her within their spirit.

The complainant is entitled to a decree declaring that she holds- the premises here in question free from the mortgage of W. H. M.,. and his cross-bill must be dismissed, with the costs of the replication thereto, but without prejudice as to his right to assert it as a lien upon the other premises described in it.