GOULD *v.* GLASS *et al.,* executors.

1. A husband conveyed land to a creditor of his wife to secure the payment of a debt. Upon the payment of the debt the creditor executed a deed to the land to the husband and wife as tenants in common, such deed being duly recorded. About six years after the record of the deed the husband and wife united in a deed as tenants in common, conveying a portion of the land, and simultaneously with the execution of this deed the purchaser executed to the husband and wife jointly a mortgage to secure the purchase-money. *Held,* that a presumption arose that the husband intended to give to his wife a half interest in the mortgage.

2. The presumption of a gift, arising from the act of the husband in allowing title to property owned by him to be taken in the name of his wife, may be repelled by evidence showing that the husband thereafter exercised acts of dominion over the property, of such a character as were inconsistent with ownership by the wife. Acts of the wife apparently recognizing ownership in the husband are proper matters for consideration in determining whether there has been an acceptance of the gift.

3. A petition praying for the equitable remedy of reformation upon the ground of mistake is insufficient if it contains only general allegations of mistake, and does not state how the mistake was made, whose mistake it was, or what brought it about.

4. Mere general allegations of fraud are not sufficient to authorize the granting of equitable relief.

5. As a general rule, equity will not decree the reformation of an instrument at the instance of one who is a mere volunteer, and who was not a party to the instrument.

6. A court of equity will not, as a general rule, require an executor to give bond for the faithful management of the estate, or, upon refusal to do so, grant an injunction against the executor to prevent him from administering the estate, in the absence of an unequivocal allegation that the executor is insolvent; and this is so though there may be general allegations of mismanagement.

7. A petition against an executor, which alleges in general terms mismanagement and threats to misappropriate the funds of the estate, and does not allege any specific act of mismanagement, or show any indebtedness to the estate on account of such acts, and does not pray for discovery, should be dismissed on demurrer.

8. A judgment disallowing an amendment to a petition, which if allowed would not have cured fatal defects in the petition, objection to which had been raised by demurrer, will not be reversed, although the allowance of the amendment might not have been erroneous.

9. Whether the allegations of the original petition and those of the amendments which were allowed be considered alone, or in connection with the averments of the amendment which was disallowed, the plaintiff was not entitled to the relief prayed for, and the judgment dismissing the petition will not be reversed.

Argued April 8, — Decided May 12, 1904.

Equitable petition. Before Judge Seabrook. Chatham superior court. February 28, 1903.

On May 14, 1900, Carrie L. Gould filed a petition which alleged, in substance, as follows: On February 20, 1847, John F. Teynac acquired title to a certain described tract of land, containing twenty-eight acres, in Chatham county, Georgia. On August 12, 1873, John F. Teynac conveyed to Ellen Teynac, as trustee for Carrie L. Glass, the plaintiff, she having since intermarried with Gould, for life, with remainder to her children, a portion of this property. Plaintiff is the daughter of Ellen Teynac, who is the widow of John F. Teynac, and petitioner's first husband, John F. Glass, was a nephew of John F. Teynac. On February 24, 1865, John F. Teynac borrowed from the Working Men's Mutual Loan Association one thousand dollars, and to secure the payment of the same executed a deed to the remainder of the property

above referred to which he then owned. This loan was afterwards paid, and the premises reconveyed to John F. Teynac. On August 31, 1877, John F. Teynac borrowed from the Railroad Mutual Loan Association one thousand dollars. The note for this sum was signed by Ellen Teynac, and from the books of the Association the loan appeared to have been made to her. The deed made to the Association to secure this loan was signed both by John F. Teynac and Ellen Teynac, and upon this deed was a consent to the execution of the same by Ellen Teynac as the wife of John F. Teynac. The Association gave to Ellen Teynac a bond to reconvey the premises upon payment of the loan. At the time this transaction took place Ellen Teynac did not own the land conveyed to the Association, or any part of it. It is averred that for this reason the bond to reconvey to her was of no force and effect. When the loan was paid, on August 20, 1883, the Association conveyed the land to John F. Teynac and Ellen Teynac. It is alleged that this "was a mistake of parties which operates as a gross injustice to the said John F. Teynac and to his estate, and gives an unconscientious advantage to said Ellen Teynac." Plaintiff did not know, until some time after the death of John F. Teynac, that Ellen Teynac claimed any interest in the land. On January 9, 1890, John F. Teynac sold to the Oglethorpe Real Estate Company all of the property above mentioned which he then owned, and three acres, known as the "Teynac Reservation," on which he lived and died. The purchaser of this property required the deed of conveyance to be signed both by John F. Teynac and Ellen Teynac, and also executed to both of them a mortgage on the property purchased, to secure an unpaid balance of the purchase-money. This is alleged to have been a mistake of the same character as that above referred to. John F. Teynac died in 1892, leaving a will in which he gave all of his property to his wife for life, with remainder to plaintiff. Ellen Teynac qualified as executrix of the will, and took possession of the estate. She now claims that the land conveyed to the Railroad Association as security, and reconveyed by it to her and her husband, was owned by them jointly in his lifetime, and sets up a claim to a one-half interest in this property, adversely to her holding as executrix and in contravention of her duties as such, notwithstanding that she knows full well that the entire title, interest, and ownership was vested

in John F. Teynac up to the date of his death.   On November 26, 1890, John F. Teynac gave a deed to part of the three acres known as the Teynac Reservation to secure a loan of one thousand dollars from the Excelsior Loan and Savings Company, which gave him a bond to reconvey upon payment of the debt.   This debt was paid by Ellen Teynac as executrix, after John F. Teynac's death, and the security deed canceled.   On April 7, 1891, John F. Teynac borrowed $600, and secured its repayment by a deed to another part of the Teynac Reservation.   This loan was also repaid and the deed canceled after John F. Teynac's death. The status of the title to these three acres and to the other portion of the property is exactly the same, both being in John F. Teynac alone and belonging to his estate, and Ellen Teynac is estopped from asserting title to any portion of it to be in herself as an individual.

It is alleged that it is inequitable, unjust, and contrary to good conscience for the mistake resulting from the reconveyance by the Railroad Association to Ellen Teynac to have the effect of vesting her with title to any portion of the property, she having no interest in it at the time the reconveyance was made.   John F. Teynac was a child so far as business matters was concerned, and allowed his wife to manage his business for him, and he knew nothing of the legal effect of the reconveyance by the Railroad Association or the subsequent joint deed and mortgage from the Oglethorpe Real Estate Company.   These conveyances were a part of a scheme on the part of Ellen Teynac to defraud plaintiff out of her remainder interest in all of the property of John F. Teynac. Carrying out her scheme to defraud plaintiff out of her remainder interest, Ellen Teynac, through misrepresentations, induced plaintiff to sign a deed to all of her interest to Ellen Teynac, in 1898, under the pretense of its being a reconveyance under a former agreement between plaintiff and Ellen Teynac which deed was afterwards cancelled.   She took advantage of the confidence reposed in her by John F. Teynac to gain an unconscientious advantage over him as to the claim to be a joint owner of the land and its proceeds.   She abused his confidence and betrayed the trusts he reposed in her, by concealing from him the fact that her name was inserted as grantee in the deeds.   Ellen Teynac never asserted any claim to any of the property until after the death of John F.

Teynac.   Notwithstanding Ellen Teynac receipted the Oglethorpe Real Estate Company as executrix for twenty thousand dollars, paid on the purchase-price of the land sold it by John F. Teynac, she now contends that half of it belonged to her individually before the death of John F. Teynac.   It is alleged that she is estopped to deny that this money belongs to the estate of her husband.   It is alleged that, unless prevented, Ellen Teynac will squander and make use of one half of this twenty thousand dollars and will waste and misapply the other half.  She has threatened plaintiff with the destruction of the entire estate, to prevent her from marrying her present husband.   The plaintiff waives discovery, and prays as follows:   that the deed of reconveyance from the Railroad Association to Ellen Teynac and John F. Teynac be reformed by striking the name of Ellen Teynac as grantee, and that all other papers which purport to give to or recognize in Ellen Teynac any interest in any of the property be likewise reformed; that by decree the estate of John F. Teynac be declared to be the owner of the land which is unsold and of the proceeds of that which was sold, so that the plaintiff as remainderman may come into and enjoy, at the death of Ellen Teynac, what she is lawfully entitled to under the will of John F. Teynac ; that Ellen Teynac be required to give bond to preserve and protect the estate, and, on failure to give bond, be enjoined from disposing of any of the corpus of the estate during her lifetime, and that a receiver be appointed to take charge of the property of the estate and manage it, in order to prevent the waste and destruction which she has threatened ; that plaintiff have a decree for the value of the property already wasted or misappropriated, if such should be found to have been done ; for general relief, and process.

By amendments to the petition the various papers referred to therein were attached as exhibits.   Among the exhibits was a paper showing that Ellen Teynac transferred to the Railroad Association five shares of stock therein owned by her to secure the loan of $1,000 above referred to.   General and special demurrers were filed by the defendant, and these were sustained.   The plaintiff excepted to this judgment, and also to the refusal to allow an amendment to her petition, an abstract of which is as follows:   The amendment reiterated the allegations of the original petition in reference to the Teynac Reservation, and in reference

to the time when Ellen Teynac first claimed to own an interest in
the property during the lifetime of John F. Teynac. It then set
forth: The will of John F. Teynac gave to Ellen Teynac all of his
property, in trust for her use for life, with remainder to plaintiff,
and empowered Ellen Teynac as executrix to sell the whole or any
part of the estate, the proceeds to be reinvested and held under
the trusts and uses mentioned. On March 7, 1892, Ellen Teynac
qualified as executrix, and as such has assented to the legacy and
devise to plaintiff. On March 15, 1894, the executrix received
from the Oglethorpe Real Estate Company the sum of one thou-
sand dollars as a part of the property of the estate, and likewise
has collected from that company various other sums from 1894 to
1899, all aggregating between nineteen and twenty thousand dol-
lars. These sums of money have not been invested by the execu-
trix as required by the will. The executrix is wasting and mis-
managing the estate, and has threatened to squander and waste
the money and to dispose of the Teynac Reservation and squan-
der the proceeds thereof. In 1892 the executrix returned the
property of the estate for taxes at a valuation $9,500 for land and
$10,000 for personal property, and in 1900 the land was returned
at only $5,000, no personal property being returned. This differ-
ence in value is caused by the waste and mismanagement of the
executrix, and is part of an effort of the executrix to conceal from
plaintiff the assets of the estate, so that they will not be forth-
coming at her death. Unless Ellen Teynac be restrained from
her waste and mismanagement and from disposing of the estate,
as she has threatened to do, the injury will be irreparable.
Plaintiff has no adequate remedy at law, and Ellen Teynac is not
worth the value of the estate, to wit, about the sum of $30,000 at
the time of the death of John F. Teynac. The prayers are, that
the sum of $20,000 possessed by John F. Teynac at the time of
his death he declared to be a part of the estate; that the portion
of the Teynac Reservation remaining unsold be declared to be a
part of the estate; that the executrix be required to state in full
all the property of the estate, that the same may be ascertained
and preserved; that the deed of reconveyance from the Railroad
Association be declared to vest the title of the land therein de-
scribed in John F. Teynac alone; that an accounting be had with
Ellen Teynac as executrix and as trustee under the will.

Pending the case in this court Ellen Teynac died, and her ex-ecutors were made parties defendant in error in her stead.

*Edward S. Elliott, R. R. Richards,* and *John S. Schley,* for plaintiff. *Saussy & Saussy* and *U. H. McLaws,* for defendants.

COBB, J. (after stating the foregoing facts.) 1. John F. Teynac had property, and married a widow who had a daughter. The controversy is between mother and daughter over the property of the husband and stepfather, now deceased. Under his will the mother is entitled to a life-estate in all of his property, and the daughter to an estate in remainder. The mother claims that a portion of the property passed to her during the life-time of her husband, and that the daughter has no interest therein. The daughter denies this claim, and avers that the property is the property of the estate of her stepfather, and that she has an estate in remainder therein. The controversy had its origin in a transac-tion which took place on August 31, 1877, when Ellen Teynac and her husband John F. Teynac united in a deed to a loan asso-ciation to a tract of land referred to in a statement of facts. The transaction was peculiar in more than one particular. The loan was made to Ellen Teynac. She signed the note and transferred stock in the association owned by her as security for its payment. As additional security, land owned by John F. Teynac was con-veyed to the association; the deed reciting that it was conveyed to secure a debt under the act of 1871, authorizing titles to be con-veyed as security for debts. The deed was signed both by Ellen Teynac and John F. Teynac in the order named, and attached to the deed was a written consent by Ellen Teynac that her husband should make the deed. The law of force at that time required that a wife's consent should be obtained to a conveyance by her husband of his property to secure his debt, but there has never been any law which required a wife's consent to a conveyance by her husband of his property to secure her debt. While the trans-action had these peculiarities about it, it was, up to this point, nothing more or less than the husband pledging his property to secure the wife's debt, which of course he had a right to do as against every one, even his own creditors if he was solvent. The bond to reconvey which was given by the association was made to Ellen Teynac, wife of John F. Teynac, and provided that upon payment of the debt by Ellen Teynac the association would recon-

vey the property to her, " or to whomsoever she may elect." When
the debt was paid the association executed a deed releasing, quit-
claiming, and reconveying the property to Ellen Teynac and John
F. Teynac.    This deed was dated August 20, 1883, was filed for
record February 19, 1884, and recorded February 26, 1884.    The
land described in this deed embraced both what is called the Tey-
nac Reservation and the lots sold to the Oglethorpe Real Estate
Company.    The latter, for convenience, will be hereafter referred
to as the Oglethorpe land.    As the two pieces stand upon a some-
what different footing, we will first deal with the question as to
the status of the Oglethorpe land.    Prior to the transaction with
the association, the legal title to all of the land was in John F.
Teynac.    Under his deed the legal title passed to the association ;
but he was still the owner of the equity of redemption, and, in the
absence of a stipulation to the contrary, the law would revest in
him the title to the property upon payment of the debt either by
himself or by his wife.    The express undertaking, however, of the
association was to convey the property upon payment of the debt
either to Ellen Teynac, or to some one whom she should select.
John F. Teynac would not be bound by this unless he consented
to it, and a conveyance by the association to any one other than
John F. Teynac of any interest in the property would be unau-
thorized in the absence of a consent or direction on the part of
John F. Teynac to that effect.    It would seem from the terms of
the deed executed by the association that Ellen Teynac had elected
that the land should be conveyed to John F. Teynac and her-
self as tenants in common.    This would be the legal effect of the
paper, provided Ellen Teynac had a right to direct how the deed
should be made.    The deed was recorded within the time allowed
under the existing law for the record of such a deed ; and about
six years thereafter John F. Teynac and Ellen Teynac united in a
deed conveying the Oglethorpe land as tenants in common, and
simultaneously with the execution of the deed the purchaser gave
to John F. Teynac and Ellen Teynac a mortgage to secure the pur-
chase-money.    These facts are sufficient to raise a presumption of
a gift by the husband to the wife to an undivided one-half interest
in the mortgage, even if the presumption as to a gift of a one-half
interest in the land did not arise prior to the sale and the mort-
gage.    The general rule is that when a husband conveys property

to his wife, or directs or permits the title to be taken in the name of his wife to property purchased with his money, or to which he would have a right to demand that title be made to him, the law raises a presumption of a gift, and this presumption remains until it is shown affirmatively that there was no intention to give on the part of the husband. See Denning *v.* Williams, 26 Conn. 226, 68 Am. Dec. 386; Thorn. Gifts, §§ 245–246. There is absolutely no averment in the petition or its amendments, or even in the amendment which was disallowed, of any fact which would authorize a jury to find that the presumption of a gift arising from the facts above enumerated had been rebutted.

2. The status of the Teynac Reservation is materially different from that of the Oglethorpe land. It does not appear that John F. Teynac ever did any express act with reference to this property like uniting in a conveyance recognizing that Ellen Teynac was interested therein. On the contrary it is distinctly alleged that after the conveyance of the Oglethorpe land John F. Teynac conveyed on two occasions, by a deed signed by him alone, certain portions of the Teynac Reservation to secure his debts. While, as stated above, the general rule is that when a husband allows title to his property to vest in his wife, there is a presumption of a gift, still this is not a conclusive presumption, and the husband is permitted to repel it. See Thorn. Gifts, § 245. See also, in this connection, *Roberts* v. *Griffith,* 112 *Ga.* 146. Dealing with the property as his own and ignoring the wife as a co-owner would be a material circumstance to be considered in determining whether there was an intention on the part of the husband to make a gift; and the act of the wife in treating the property as that of the husband would also be proper to be considered in determining whether there had been by her an acceptance of the gift. The facts alleged were sufficient to raise a presumption of a gift as to a half-interest in all the land embraced in the deed to the association. As stated above, there was nothing alleged to repel this presumption so far as the Oglethorpe land was concerned. The facts alleged in reference to the Teynac Reservation were, however, sufficient to raise an issue of fact as to whether there was an intention on the part of the husband to include the whole tract in the gift, or that the same should be limited to the Oglethorpe land.

3. The averments of the petition are sufficient to make an issue

for the jury as to whether the intention of the husband to give extended to the whole tract or was limited to the Oglethorpe land; and therefore it becomes necessary to determine whether, this being conceded as true, the allegations of the petition were such as to authorize in behalf of the plaintiff the relief prayed for by her. She prays that the different papers which are relied upon as raising the presumption of a gift may be reformed so as to eliminate therefrom the name of Ellen Teynac altogether, upon the ground that her name was placed therein as a result of a mistake. The allegations of the petition in reference to mistake are of the most general nature. It does not appear how the mistake was made, whose mistake it was, or what brought about the mistake. In other words, taking the allegations as a whole, they are nothing more nor less than a statement to the effect that as John F. Teynac owned the land, he certainly could not have intended that anybody else should have any interest therein, and that therefore any paper which showed a contrary intention must be founded upon a mistake. Stripped of all its verbiage, this is the substance of the petition in reference to this matter. A court of equity will not reform a paper upon the ground of mistake on any such general allegations.

4. The allegations of fraud are also general in their nature, and for this reason are insufficient to authorize a decree in the plaintiff's behalf. In order to set aside a conveyance for fraud, the allegations attacking the instrument must be specific in their nature.

5. The plaintiff is a mere volunteer. She is not an heir of John F. Teynac, nor was she a party to any of the conveyances sought to be reformed. Under his will she took a remainder interest in all of his property, subject to the life-estate of her mother; but this of course gave her no interest in any property the title to which had passed out of him, either by gift or otherwise, during his lifetime. If John F. Teynac at the date of his death was the owner of the property in controversy, of course as remainderman under his will the plaintiff would be interested in the property; but if for any reason title to the property had passed out of him during his lifetime, she would have no interest in it, and would not be heard to reform papers made by him which had the effect to pass the title, or which could be used as evidence of an intention to that effect.

6. There was no distinct, unequivocal allegation that Ellen Teynac was insolvent, nor was there any prayer for discovery; and hence there was no equity in the petition so far as the prayers which ask that the executrix be placed under bond, or that a receiver be appointed, and injunction issue, were concerned. This is true though there were general allegations of mismanagement and waste. See *Griffin* v. *Henderson,* 116 *Ga.* 310.

7. The petition alleged, in general terms, mismanagement on the part of the executrix and threats to misappropriate the estate, but did not contain any specific allegation showing any act of misappropriation or mismanagement, nor were there any averments from which it could be ascertained that the executrix had incurred any liability to the estate in any given sum; nor was there a prayer for discovery. It is conceded that since the death of Ellen Teynac, even if the judgment should be reversed, there would be no equity in the petition so far as the application for a receiver and for injunction are concerned; but it is contended that the petition should remain in court for the purpose of an accounting. The allegations of the petition are entirely too general for this purpose. As stated above, there is no averment from which it could be shown that the estate of Ellen Teynac is liable to the estate of John F. Teynac for any given amount growing out of a misappropriation by her of the assets of that estate. The judgment, therefore, will not be reversed in order that the case may be held in court for the purpose of an accounting. Even if the petition was amendable in this particular, the plaintiff in error should have availed herself of the opportunity to amend before the judgment was entered dismissing the case on demurrer.

8. There was no error in disallowing the amendment. It was in large part, if not entirely, an elaboration of the allegations of the original petition, making more specific certain averments and prayers as to the Teynac Reservation. Taken as a whole, both that part which was practically a restatement of allegations in the original petition, as well as those portions which might be said to introduce new matter, there was nothing in the amendment which had the effect to relieve the petition from the infirmities under which it labored; and even if allowed, it would not have saved the case from the inevitable fate which the law had in store for it. It probably would not have been erroneous to allow the amend-

ment; but if it had been allowed, the petition would still have been demurrable.

9. After a careful consideration of the entire record and of the numerous points raised therein, we have reached the conclusion that the judgment complained of was the only proper judgment that could have been rendered under the facts as they appear in the record. Absolutely nothing appears in the petition or its amendments to rebut the presumption of a gift as to a one-half interest in the Oglethorpe land, and under the facts alleged a jury would be compelled to find that a gift was intended, and was accepted. As to the Teynac Reservation, the fact that John F. Teynac dealt with this property as his own after he had treated his wife as a part owner of the Oglethorpe land would be a strong circumstance that he did not intend the gift to extend to this portion of the property; and the fact that Ellen Teynac did acts in her capacity as executrix which could be construed as treating the Teynac Reservation, or at least a part of it, as still belonging to the estate of her husband would be a circumstance which might be properly considered in determining whether there had been an acceptance by her of the gift so far as the Teynac Reservation was concerned. In other words, the intention to give and the intention to accept were present in reference to the Oglethorpe land. Whether there was an intention to give, and whether there had been an acceptance, was questionable in regard to the Teynac Reservation. But even if the Teynac Reservation is the property of the estate of John F. Teynac, the plaintiff is not entitled to the relief prayed for in the present case; for, upon the death of Ellen Teynac, she became the owner of the Teynac Reservation, and so far as the specific property is concerned she has a complete remedy to recover the same by an appropriate action against the person in possession. She had no right to recover it during the lifetime of Ellen Teynac, and Ellen Teynac's death pending the litigation does not give the plaintiff the right to proceed against her legal representative in the present action.

*Judgment affirmed. All the Justices concur.*